132 T.C. No. 8

UNITED STATES TAX COURT

CATHY MARIE LANTZ, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25078-06.                    Filed April 7, 2009.


     P sought relief under sec. 6015(f), I.R.C., from
joint income tax liability for 1999.  R denied relief
on the basis that P did not request relief within 2
years of R's first collection action.  Consequently, R
did not reach the substantive issues of the claim.
Both parties argue the validity of sec. 1.6015-5(b)(1),
Income Tax Regs., which applies the 2-year limitations
period to sec. 6015(f), I.R.C.

     Held:  Sec. 1.6015-5(b)(1), Income Tax Regs., is
an invalid interpretation of sec. 6015(f), I.R.C., and
further proceedings are required to determine the
validity of P's claim for relief.


Paul M. Kohlhoff and Robert B. Nadler, for petitioner.

Timothy S. Sinnott, for respondent.

OPINION

GOEKE, Judge:  Petitioner brought this case under section 6015[1] seeking review of respondent's denial of relief from joint income tax liability for 1999.  Respondent denied relief solely because petitioner did not request relief from joint tax liability within 2 years of the time respondent took a collection action against petitioner for the joint tax liability.  Both parties have argued the validity of section 1.6015-5(b)(1), Income Tax Regs., which provides a 2-year limitations period after a collection action for request for relief under section 6015(f).  For the reasons explained herein, we find the regulation to be inconsistent with and to be an impermissible interpretation of the statute.

## Background

At the time the petition was filed, petitioner resided in Indiana.

During 1999 petitioner was married to Dr. Richard M. Chentnik, a dentist.  Petitioner did not work outside the home in 1999.

Petitioner and Dr. Chentnik timely filed a joint Form 1040, U.S. Individual Income Tax Return, for the tax year 1999.  The return reflected tax of $112,291.11 and an estimated tax penalty

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code.

of $2,070.60. Included with the return was a payment of $115,550, resulting in a credit of $1,188.29, which was transferred to a Form 941, Employer's Quarterly Federal Tax Return, of Dr. Chentnik for 1985.

Dr. Chentnik was arrested on June 8, 2000, and subsequently convicted of Medicare fraud. As a result of the conviction he was sentenced to Federal prison and incarcerated in Terre Haute, Indiana. He was incarcerated throughout 2003 and was released from prison to a halfway house in August 2004.

In the summer of 2002 petitioner moved to Logansport, Indiana, where she resided throughout 2003.

As a result of the Medicare fraud, respondent determined that the joint income tax liability for 1999 was understated. When no petition was filed after the issuance of a notice of deficiency, respondent assessed the following amounts against petitioner and Dr. Chentnik on August 12, 2002:

| Item | Amount |
|------|--------|
| Income tax | $656,111 |
| Sec. 6662 penalty | 131,222 |
| Interest | 140,778 |

Another result of Dr. Chentnik's Medicare fraud was the seizure of his assets in April 2000 by U.S. Marshals. As a result of the seizure, the U.S. Marshals Service transmitted a check in the

amount of $2,592,022.68 to the center for Medicare and Medicaid services in November 2003.

On May 11, 2003, respondent issued separate letters to petitioner and Dr. Chentnik at the Logansport address, advising them that respondent was proposing a levy action to collect their joint income tax liability for 1999.  Respondent considers the letter to petitioner to be a collection action, and we agree. These letters conformed with the notice requirements of section 6330.  Although Dr. Chentnik was in prison, he advised petitioner that he would communicate with respondent regarding these notices, which he did.  As a result of Dr. Chentnik's communications with respondent's Appeals Office, on February 9, 2004, two notices of determination were issued solely to Dr. Chentnik.  In these notices of determination the Appeals Office determined that the joint account of petitioner and Dr. Chentnik should be moved into currently noncollectible status because "the taxpayer's financial condition reflects that the account is noncollectible at this time.  Therefore, serving a levy would cause undue hardship for the taxpayer at this time."

In his correspondence with the Appeals Office, Dr. Chentnik advised that the Appeals officer should communicate with him directly, and he requested a form to seek relief for petitioner. He characterized petitioner as "the innocent spouse" in his

correspondence with respondent. Dr. Chentnik died in a halfway house in October 2004.

Petitioner relied upon Dr. Chentnik to resolve the 1999 income tax issue and took no independent action regarding the collection letters from respondent until her income tax overpayment for 2005 was applied against the 1999 tax liability. After communicating with representatives from the Internal Revenue Service (IRS), petitioner filed Form 8857, Request for Innocent Spouse Relief, on June 23, 2006. Petitioner dated the Form 8857 June 9, 2006. In July 2006 respondent notified petitioner that relief for the year 2005 was not needed because she did not file a joint return for that year. On July 6, 2006, respondent issued a preliminary determination denying petitioner relief for 1999 because her claim was filed more than 2 years after the first collection action taken against her. Petitioner protested this determination, and her claim was assigned to an Appeals officer. The Appeals officer determined that petitioner is not entitled to relief under section 6015 because she did not file a claim within 2 years of the first collection activity. Because respondent denied petitioner's claim as untimely, the substantive merits of her claim were never addressed. Respondent issued a notice of determination denying petitioner's claim for relief on September 7, 2006. Petitioner then timely filed a petition in this Court.

## Discussion

1. Joint Liability

In general, taxpayers filing joint Federal income tax returns are each responsible for the accuracy of their return and are jointly and severally liable for the entire tax liability due for the year of the return. Sec. 6013(d)(3). In certain circumstances, however, a spouse may obtain relief from joint and several liability by satisfying the requirements of section 6015.

Section 6015(a)(1) provides that a spouse who made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax with respect to a joint return). Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c). Relief from joint and several liability under section 6015(b) and/or (c) is available only with respect to a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D) and (c)(1). Also, to qualify for relief under section 6015(b) or (c), the requesting spouse must make an election not later than 2 years after the Commissioner has begun a collection action. Sec. 6015(b)(1)(E) and (c)(3)(B). If relief is not available under either section 6015(b) or (c), an individual may seek equitable relief under section 6015(f), which we find is the basis of petitioner's

claim.   Petitioner's request for relief was submitted to respondent over 2 years after the May 11, 2003, collection action, and section 6015(b) and (c) is unavailable to her.

Section 6015(f) does not impose the 2-year limitations period.  However, a 2-year limitations period for requesting relief under section 6015(f) was included in Notice 98-61, sec. 3.01(3), 1998-2 C.B. 756, 757, and subsequently in Rev. Proc. 2000-15, 2000-1 C.B. 447; Rev. Proc. 2003-61, 2003-2 C.B. 296; and section 1.6015-5, Income Tax Regs.

2.   Rulemaking Under Section 6015

Rev. Proc. 2000-15, supra, was published on January 31, 2000, to provide guidance for taxpayers seeking relief from Federal tax liability under section 6015(f).  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, sets forth seven general requirements that must be satisfied for any request for equitable relief under section 6015(f) to be considered by the Commissioner:  (1) The requesting spouse filed a joint return for the year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the application for relief is no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998; (4) except where an exception applies, the liability remains unpaid; (5) no assets were transferred between spouses as part of a fraudulent scheme; (6) no disqualified assets were transferred

to the requesting spouse by the nonrequesting spouse; and (7) the requesting spouse did not file the return with fraudulent intent.

Rev. Proc. 2003-61, supra, published on August 11, 2003, adds the threshold requirement that absent enumerated exceptions, the liability from which relief is sought must be attributable to an item of the nonrequesting spouse.  Rev. Proc. 2003-61, supra, omits requirement No. 4 of Rev. Proc. 2000-15, supra, from its list of threshold requirements, revises the "knowledge or reason to know" factor for determining whether to grant equitable relief, and broadens the availability of refunds if equitable relief is granted under section 6015(f).

Sections 1.6015-0 through 1.6015-9, Income Tax Regs., were published on July 17, 2002 (effective July 18, 2002), pursuant to a mandate from Congress to promulgate regulations pertaining to section 6015 in general under section 6015(h) and procedures concerning requests for equitable relief under section 6015(f) in particular.  Section 1.6015-4(a), Income Tax Regs., states that the IRS has discretion to grant equitable relief from joint and several liability when, considering all of the facts and circumstances, it would be inequitable to hold the requesting spouse jointly and severally liable.  Section 1.6015-4(c), Income Tax Regs., refers taxpayers to Rev. Proc. 2000-15, supra,[2] for

---

[2]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296.

guidance concerning the criteria to be used in determining whether it is inequitable to hold the requesting spouse jointly and severally liable under section 6015(f). Section 1.6015-5, Income Tax Regs., sets forth the time and manner for requesting relief and limits the time for requesting relief under section 6015(f) to 2 years from the first collection activity against the requesting spouse after July 22, 1998, in the same manner as the statutory restrictions on section 6015(b) and (c). In connection with the promulgation of the regulation, a Notice of Proposed Rulemaking and Public Hearing was issued on January 17, 2001, 66 Fed. Reg. 3888, and a public hearing was held on May 30, 2001. Subsequently, a Treasury Decision was issued promulgating the final regulation--T.D. 9003, 2002-2 C.B. 294.

3.   Prior Tax Court Cases

Respondent asserts that this Court has previously accepted the 2-year period imposed on requests for relief under section 6015(f), citing Campbell v. Commissioner, 121 T.C. 290 (2003), and McGee v. Commissioner, 123 T.C. 314 (2004). In Campbell, we determined that an offset of a subsequent year overpayment to the joint liability in question was a collection activity initiating the 2-year period set forth in Rev. Proc. 2000-15, sec. 5, 2000-1 C.B. at 449. The taxpayer did not raise the permissibility of imposing a limitations period for requests for relief under section 6015(f). The sole issue before the Court was whether the

application of the overpayment constituted a collection action. Campbell v. Commissioner, supra at 291.

In McGee v. Commissioner, supra, we held that the Commissioner's failure to include an explanation of the taxpayer's rights under section 6015 in the notice of the application of a subsequent year overpayment to the joint liability in question was a violation of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3501(b), 112 Stat. 770, and accordingly, it was inequitable and an abuse of discretion for the Commissioner to apply the 2-year limitations period of Rev. Proc. 2000-15, supra. We specifically stated in McGee v. Commissioner, supra at 320 n.4, that we did not reach the question raised by the taxpayer as to whether it was inappropriate to have a strict limitations period apply to section 6015(f).

The Court has not yet addressed the issue of whether the imposition of the 2-year limitations period in section 1.6015-5(b)(1), Income Tax Regs., is valid.  See Campbell v. Commissioner, supra; McGee v. Commissioner, supra; Nelson v. Commissioner, T.C. Memo. 2005-9; Durham v. Commissioner, T.C. Memo. 2004-184; Hall v. Commissioner, T.C. Memo. 2004-170.

4.  Standard of Review

We need not revisit whether the proper standard of review of the Commissioner's regulations is the standard of Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. 472 (1979), or the standard set forth in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984), insofar as there may be a difference between them. See Swallows Holding, Ltd. v. Commissioner, 515 F.3d 162 (3d Cir. 2008), vacating and remanding 126 T.C. 96 (2006). Following Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we apply the law of the Court of Appeals to which an appeal in the case would normally lie. Section 1.6015-5, Income Tax Regs., was issued under both a general grant of authority under section 7805 and a specific grant of authority under section 6015(h). T.D. 9003, 2002-2 C.B. 294. The U.S. Court of Appeals for the Seventh Circuit has held that regulations issued under general or specific authority of the IRS to promulgate necessary rules are entitled to Chevron deference. Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 979, 982-983 (7th Cir. 1998); see also Khan v. United States, 548 F.3d 549 (7th Cir. 2008) (reviewing a general authority tax regulation under Chevron); Square D Co. & Subs. v. Commissioner, 438 F.3d 739, 745 (7th Cir. 2006) (reviewing a regulation issued pursuant to an express delegation of authority under Chevron), affg. 118 T.C. 299 (2002).

Accordingly, we will follow the <u>Chevron</u> standard in this analysis.[3]

In <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, <u>supra</u> at 842-843, the Supreme Court created a two-prong test: (1) If Congress has directly spoken to the precise question at issue, we give effect to the unambiguously expressed intent of Congress. If the statute is ambiguous, then we continue to the second prong: (2) If the statute is ambiguous with respect to the specific issue, we determine whether the regulation is a permissible construction of the statute.[4] See also <u>Bankers Life & Cas. Co. v. United States</u>, <u>supra</u> at 983.

5. <u>Whether Congress Has Spoken on the Issue</u>

Respondent argues that section 1.6015-5(b)(1), Income Tax Regs., passes the first prong of <u>Chevron</u> because section 6015(f) is silent with respect to the period of limitations for seeking

---

[3]Respondent argues in the alternative that Rev. Proc. 2003-61, <u>supra</u>, is entitled to <u>Skidmore</u> deference, because Congress specifically directed the Secretary to prescribe procedures pertaining to requests for equitable relief under sec. 6015(f). See <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944). We find the appropriate test to be that of <u>Chevron</u>, not <u>Skidmore</u>. See <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-843 (1984). Therefore, our prior discussion is dispositive.

[4]The Court of Appeals for the Seventh Circuit has interpreted the second prong of the <u>Chevron</u> test as a question of "the reasonableness of the regulation". <u>Bankers Life & Cas. Co. v. United States</u>, 142 F.3d 973, 983 (7th Cir. 1998). However, we find that sec. 1.6015-5(b)(1), Income Tax Regs., is neither a permissible construction of the statute nor a reasonable regulation, and our analysis is the same under either standard.

relief.  Consequently, respondent maintains that promulgating a regulation that prescribes a period of limitations is a permissible exercise of the authority delegated to the Secretary.

Section 6015(f) provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1)  taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> >
> > (2)  relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

While it is clear that section 6015(f) does not set forth a period of limitations, we disagree that the statute is silent as to whether a period of limitations applies to subsection (f). The first prong of <u>Chevron</u> requires the Court to employ the traditional tools of statutory construction to try to determine the intent of Congress.  <u>NLRB v. United Food & Commercial Workers Union, Local 23</u>, 484 U.S. 112, 123 (1987); <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 447-448 (1987).  "It is a central tenet of statutory construction that, when interpreting any one provision of a statute, the entire statute must be considered."  <u>Fla. Country Clubs, Inc. v. Commissioner</u>, 122 T.C. 73, 79 (2004), affd. 404 F.3d 1291 (11th Cir. 2005); see also <u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 36 (1998).

Accordingly, we must consider the significance of the omission of a deadline for requesting relief in section 6015(f) in the light of section 6015 as a whole.

To be eligible for relief under section 6015(b) or (c), the statute explicitly provides that the requesting spouse must elect relief not later than the date that is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election. Sec. 6015(b)(1)(E) and (c)(3)(B). However, there is no such limitation in section 6015(f). "'It is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another'". City of Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338 (1994) (quoting Keene Corp. v. United States, 508 U.S. 200, 208 (1993)). We find that by explicitly creating a 2-year limitation in subsections (b) and (c) but not subsection (f), Congress has "spoken" by its audible silence. Because the regulation imposes a limitation that Congress explicitly incorporated into subsections (b) and (c) but omitted from subsection (f), it fails the first prong of Chevron.

Furthermore, under section 6015(f)(2), the equitable remedy is available only "if * * * relief is not available to such individual under subsection (b) or (c)". That is, by its very nature the equitable relief under subsection (f) is to be broader

than relief under subsection (b) or (c). In order for subsection (f) relief to be more broadly available than under the 2-year filing rule of subsections (b)(1)(E) and (c)(3)(B), a deadline under subsection (f) would need to be longer than 2 years. Clearly, the timing of the request for relief is not the only possible element by which subsection (f) relief would be broader than that of subsection (b) or (c). For example, the individual might have signed the return knowing of the understatement (and thus falling afoul of subsection (b)(1)(C)) but might have been a victim of spousal abuse so that it could be inequitable to hold that individual liable. An equitable remedy that had a 2-year bar but allowed relief to the abused spouse would be more liberal than subsection (b), despite the time limit. Accordingly, a Congress intending broader relief under subsection (f) might be nonetheless content with the same timing rule as for subsections (b) and (c). However, the Congress that enacted section 6015 made it clear on the face of the statute that one difference between subsection (f) and subsections (b) and (c) was the time for requesting relief, because it established a 2-year deadline in subsections (b) and (c) and imposed no deadline in subsection (f). In fact, the timing distinction is one of the only three differences between subsections (b) and (f) that are explicit in

the statute.[5]  Had Congress intended a 2-year period of limitations for equitable relief, then of course it could have easily included in subsection (f) what it included in subsections (b) and (c).  However, Congress imposed no deadline, yet the Secretary prescribed a period of limitations identical to the limitations Congress imposed under section 6015(b) and (c).

While subsection (f) demonstrates a clear congressional attempt to address inequitable situations not addressed by subsections (b) and (c), apart from the absence of a time limit the statute does not define those situations.  Rather, Congress provides that the Secretary consider all the facts and circumstances and determine whether equitable relief is appropriate.  Congress also provided jurisdiction to this Court to determine whether the taxpayer is entitled to relief under section 6015(f).  Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061.  Under section 1.6015-5(b)(1), Income Tax Regs., the Secretary must deny section

---

[5]The three conditions that are present in sec. 6015(b) but are absent from sec. 6015(f) are:  (1) The requirement in sec. 6015(b)(1)(B) that there be an understatement of tax; (2) the requirement in sec. 6015(b)(1)(C) that the individual did not know of the understatement; and (3) the requirement of sec. 6015(b)(1)(E) that the election be filed within 2 years of collection activity.  Sec. 1.6015-5, Income Tax Regs., treats only the third of these requirements (the 2-year limitation) as a condition that should also be imposed on sec. 6015(f).  While Rev. Proc. 2003-61, supra, treats the second condition (the individual's lack of knowledge) as a factor to be considered when determining whether relief should be granted under sec. 6015(f), it is not a threshold or determinative factor.

6015(f) relief where the individual seeking relief failed to meet a 2-year time limit, without considering circumstances such as abuse, intimidation, or misrepresentation, which might have contributed to or caused the request for relief to be delayed.

We do not believe that Congress intended the circumvention of the analysis required by section 6015(f) that results from the restrictions of section 1.6015-5(b)(1), Income Tax Regs.  In subsection (f), Congress designed a general remedy to meet inequitable situations not specifically addressed in subsections (b) and (c).  The general nature of the remedy in subsection (f) implies an intent to address difficult marital circumstances too subject to variation for more specificity.  The Secretary's adoption of the very timing rule that Congress had imposed on subsections (b) and (c) but had specifically omitted from subsection (f) runs directly contrary to the nature of the relief provided by Congress.[6]

However, for the sake of argument, we consider whether section 1.6015-5(b)(1), Income Tax Regs., is a permissible construction of the statute in the event that the absence of a 2-

---

[6]The legislative history mirrored the statute:

> The conferees intend that such authority be used where, taking into account all the facts and circumstances, it is inequitable to hold an individual liable for all or part of any unpaid tax or deficiency arising from a joint return. * * *

H. Conf. Rept. 105-599, at 254 (1998), 1998-3 C.B. 747, 1008.

year limitations period in section 6015(f) is construed as an ambiguity.

6.  Whether the 2-Year Limitations Period Is Permissible

    a.  Congress's Intent in Omitting a Limitations Period

For the same reasons we believe section 1.6015-5(b)(1), Income Tax Regs., fails the first step of the Chevron test, we find that the regulation is impermissible because it is contrary to the intent of Congress.  Section 6015(f) is a recognition that the circumstances of joint tax liability can be complex and difficult.  Such circumstances can lead to unfair results under section 6013(d)(3) that may not be remedied under section 6015(b) or (c).  Therefore, Congress provided section 6015(f) as a last resort to avoid potential harsh circumstances imposed upon one spouse in a joint return situation, and Congress specifically omitted a temporal limitation on a request for equitable relief.  Because the failure to comply with a 2-year limitations period does not necessarily indicate that a taxpayer should not be eligible for equitable relief, to deny a taxpayer relief under section 6015(f) for failure to comply with a limitation rule that would also prevent the taxpayer from obtaining relief under section 6015(b) or (c) is impermissible.[7]

---

[7]Petitioner relied upon her spouse to address their joint tax problems.  This reliance initially appeared to result in a successful resolution, and she took no further action after his death.

b.  Contrasting Timing Rules Under Section 66(c)

Section 1.6015-5(b)(1), Income Tax Regs., reflects a one-size-fits-all approach for both traditional and equitable relief that the Secretary did not employ when promulgating regulations under a companion statute--section 66(c).  The different approach used in the regulations under section 66(c) underscores the unreasonableness of the rule under consideration here.

Section 66 provides for the treatment of "community income" in community property States when the spouses do not file jointly.  This section, amended in 1984 by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(b), 98 Stat. 801, allocates the income between the spouses, and its subsection (c), embodying relief referred to as "traditional relief", creates exceptions where "taking into account all facts and circumstances, it is inequitable" to follow the general rule--the same language that appears in section 6015(b)(1)(D).  At the time, Congress noted in legislative history that the availability of such relief might take into account "whether the defense was promptly raised".[8]

An "equitable relief" provision was added to section 66(c) by RRA 1998 sec. 3201(b), 112 Stat. 739, in the same section of

---

[8]H. Rept. 98-432 (Part 2), at 1503 (1984).  As is noted below, the congressional reference to acting "promptly" influenced Treasury's later drafting of the regulations. However, no regulations were promulgated under sec. 66 until after the statute was amended in 1998.

RRA 1998 that enacted section 6015(f).  To the very end of
section 66(c), RRA 1998 added this sentence:

> Under procedures prescribed by the Secretary, if,
> taking into account all the facts and circumstances, it
> is inequitable to hold the individual liable for any
> unpaid tax or any deficiency (or any portion of either)
> attributable to any item for which relief is not
> available under the preceding sentence, the Secretary
> may relieve such individual of such liability.
> [Emphasis added.]

The language emphasized above, enacted in RRA 1998 sec. 3201(b),
is identical to language added by RRA 1998 sec. 3201(a), 112
Stat. 734, to the statute relevant here--section 6015(f).

In 2002 the Secretary proposed regulations under
section 66(c) that included section 1.66-4(g)(2), Proposed Income
Tax Regs, 67 Fed. Reg. 2845 (Jan. 22, 2002), entitled "Time
period for filing a request for relief".  This proposed
regulation had two relevant subdivisions:  The first was
"(i) Specific relief", and it included a 6-month cutoff
provision; and the second was "(ii) Equitable relief", and it
included no cutoff.[9]

---

[9]In the announcement of the proposed regulations under
sec. 66(c), 67 Fed. Reg. 2841 (Jan. 22, 2002), the Secretary
observed that the relief provided in sec. 66(c) "is analogous to
the relief provision in section 6015(b) * * * [and] section
6015(f)".  It explained that "a requesting spouse seeking
[traditional] relief from the operation of community property law
under sec. 66(c) must request such relief no later than 6 months
before the statute of limitations on assessment of section 6501
expires with regard to the nonrequesting spouse", id. at 2842,
but that a "spouse seeking equitable relief * * * may seek relief
on or after the date the return for such year is filed", id. at
(continued...)

In 2003 the Secretary announced the promulgation of the final regulations, T.D. 9074, 2003-2 C.B. 601, 603, and explained this timing difference by reference to the legislative history:

> One commentator suggested that the time limitations set forth in § 1.66-4 for requesting relief under section 66(c) are not supported by the language of section 66(c). Although the statute itself does not set forth time limitations on the filing of a request for relief, the time limitations in the proposed regulations are supported by the [1984] legislative history of the traditional relief provision of section 66(c). Specifically, the House Report explaining traditional relief under section 66(c) states that, in making the determination as to relief, the IRS should consider (among other things) "whether the defense was promptly raised so as to prevent the period of limitations from running on the other spouse." H.R. Rep. 98-432, pt. 2, at 1501 (1984). Thus, the final regulations retain the time limitations set forth in the proposed regulations. In contrast, § 1.66-4(j)(2)(ii) sets forth timing requirements for requesting equitable relief that are broader than the requirements applicable to traditional relief because the legislative history of the equitable relief provision does not contain similar timing requirements. Therefore, a requesting spouse who does not meet the time limitations to request traditional relief may be eligible to request equitable relief. [Emphasis added.]

The Secretary was thus alert to an arguably subtle distinction not even reflected in the language of section 66(c), but only in its legislative history. Thus informed by the legislative history, the Secretary established, by regulation, a cutoff for requesting "traditional relief" under section 66(c) (because the legislative history suggested a need for making such requests

---

[9](...continued)
2843.

"promptly * * * so as to prevent the period of limitations from running on the other spouse"), but it made a distinction and declined to establish a deadline for requesting equitable relief (because the legislative history on the equitable relief provision in section 66(c) was silent as to any timing issue). While the Secretary imposed a 2-year deadline on requesting equitable relief under section 66(c) in Rev. Proc. 2000-15, secs. 4.01(3) and 5, 2000-1 C.B. at 448, 449, and Rev. Proc. 2003-61, secs. 4.01(3) and 5, 2003-2 C.B. at 297, 299, this deadline is four times as long as the 6-month deadline available for traditional relief under section 66(c).

For section 6015, on the other hand, one need not be so alert to note the distinction:  it appears not merely in legislative history but in the words of the statute itself; and the distinction is reflected not merely in one subtle adverb ("promptly") but in explicit deadlines in section 6015(b) and (c), and no deadline in section 6015(f).  However, despite this patent distinction between the traditional and equitable relief provisions under section 6015, the same department that had sensibly promulgated different regimes for traditional and equitable relief under section 66(c) established, without explanation, one timing rule for all relief under section 6015, whether traditional or equitable.

The Secretary should have been no less alert to the timing distinctions explicit in section 6015 than he was to the timing distinctions implicated by the word "promptly" in the legislative history to section 66(c). In implementing section 6015 the Secretary should have understood (as he understood when section 66(c) was under consideration) that the statutory silence about deadlines in section 6015(f) was meaningful, and he should have inferred that the procedures to be prescribed under section 6015(f) should not contain the same deadline that Congress imposed in subsections (b) and (c) but declined to impose in subsection (f).

In 1998 Congress evidently intended that taxpayers have two kinds of remedies--traditional remedies (sections 66(c)(4) and 6015(b) and (c)) with stricter deadlines, and equitable remedies (sections 66(c) (flush language) and 6015(f)) with looser procedures to be set up by the Secretary (as he did in the case of section 1.66-4(j)(2)(ii), Income Tax Regs.). But given the explicit congressional purpose, it was not reasonable for the Secretary to adopt for the equitable remedy of section 6015(f) a deadline that was identical to, and no looser than, the 2-year deadline Congress had enacted for the traditional remedy in section 6015(b).[10]

---

[10]The parties both assert that a taxpayer seeking sec. 6015(f) relief more than 2 years after the initial collection

(continued...)

c. <u>Swallows Holding Ltd. Distinguished</u>

Respondent argues that this case is analogous to <u>Swallows Holding, Ltd. v. Commissioner</u>, 515 F.3d 162 (3d Cir. 2008), where the court found that the Secretary was justified in promulgating a regulation that prescribed a filing deadline where the statute was ambiguous. However, because of the equitable test in section 6015(f) and the statutory contrast between section 6015(b) and (c) and section 6015(f), this case is distinguishable from <u>Swallows Holding, Ltd.</u> Although both cases involved the imposition by regulation of a temporal limitation on filing, the

---

[10](...continued)
action cannot obtain an extension of time under sec. 301.9100-3, Proced & Admin. Regs. We accept their mutual position in this case because in the light of respondent's position any effort by petitioner to apply for relief under sec. 301.9100-3, Proced. & Admin. Regs., would be fruitless. An agency's interpretation of its own regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414 (1945); <u>Philips Petroleum Co. v. Commissioner</u>, 101 T.C. 78, 97 (1993), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995).

In addition, the complex procedures required for requesting an extension under sec. 301.9100-3(e), Proced. & Admin. Regs., would, for many or most claimants under sec. 6015(f), be daunting to the point of impracticability. To request an extension, a taxpayer would have to file affidavits and information as required by sec. 301.9100-3(e)(2) through (4), Proced. & Admin. Regs., and, pursuant to sec. 301.9100-3(e)(5), Proced. & Admin. Regs., would have to meet the requirements of Rev. Proc. 2007-1, 2007-1 C.B. 1, for ruling requests. Those requirements include making the payment of a $625 "user fee" and providing the information requested in the 18 items of information requested in Rev. Proc. 2007-1, sec. 7.01. We agree that an extension under section 301.9100-3, Proced. & Admin. Regs., is not available-- either legally or practically--to a sec. 6015(f) claimant.

similarity ends there; and the statutory framework is completely different regarding the nature of the relief afforded.

Swallows Holdings, Ltd. addressed section 1.882-4(a)(3)(i), Income Tax Regs., which was promulgated pursuant to section 882(c)(2) and prescribes the manner in which a return should be filed. That regulation sets forth an 18-month filing deadline for foreign businesses claiming deductions against income from business activities conducted in the United States. The Court of Appeals for the Third Circuit held that prescribing a filing deadline was appropriate. Respondent argues that the instant case is analogous to that situation. However, section 882(c) sets forth a rule regarding the allowance of deductions and credits, not a test for inequity from which a 2-year limit was specifically omitted in contrast to the related preceding subsections of the statute.

d. A Better Analogy: The Bureau of Prisons Regulatory Cases

We find the present regulatory controversy to be analogous to those in several appellate cases involving the conflict between the Bureau of Prisons (BOP) regulations codified at 28 C.F.R. sections 570.20 and 570.21 and the congressional intent articulation in 18 U.S.C. section 3621(b). See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir.

2005).  The controversy in those cases involved the eligibility

of prisoners for Community Correctional Center (CCC) placement.

Title 28 C.F.R. section 570.21(a) (2008) provides that the BOP

"will designate inmates to community confinement only * * *

during the last ten percent of the prison sentence being served,

not to exceed six months."  The BOP identified 18 U.S.C. section

3621(b) as authorizing this categorical exercise of discretion

and viewed the promulgation of a categorical rule as permissible

under Lopez v. Davis, 531 U.S. 230 (2001).  The Courts of Appeals

in the cases cited above found the BOP regulations invalid under

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467

U.S. 837 (1984).  The Court of Appeals for the Third Circuit

explained in Woodall v. Fed. Bureau of Prisons, supra at 249:

> we are faced with a statute providing that the BOP must
> consider several factors in CCC placement, and a
> regulation providing that the agency may not consider
> those factors in full.  The conflict between the
> regulations and the statute seems unavoidable.

While 18 U.S.C. section 3621(b), like section 6015(f), uses

the discretionary term "may" with respect to the BOP's authority

to select the place of imprisonment,[11] the courts cited above

--------

[11]18 U.S.C. sec. 3621(b) (2006) provides:

> (b) Place of Imprisonment.--The Bureau of Prisons
> shall designate the place of the prisoner's
> imprisonment.  The Bureau may designate any available
> penal or correctional facility that meets minimum
> standards of health and habitability established by the
> Bureau, whether maintained by the Federal Government or

(continued...)

found that this does not give the BOP discretion to decline to consider certain factors before making that decision.  As the Court of Appeals in <u>Woodall v. Fed. Bureau of Prisons</u>, <u>supra</u> at 245, explains:

> The government argues that the use of the word "may" at the beginning of § 3621(b), rather than "shall," is determinative in proving that consideration of the factors is essentially optional.  <u>We believe that this narrow reading ignores the context of the statute</u>.  <u>See</u> <u>Deal v. United States</u>, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (noting the "fundamental principle of statutory construction ... that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used").  <u>A commonsense reading of the text-- especially when combined with the legislative history-- makes clear that the BOP is required to consider each factor.  "May" refers to the ability of the BOP to make ultimate placement designations, not to the § 3621 factors</u>.  The word "may" is a full fifty words away from the considerations, and its effect is separated from the factors with a comma.  [Emphasis added.]

We find section 1.6015-5(b), Income Tax Regs., to be a similar attempt to limit factors for consideration in making the mandated determination under section 6015(f) in a way that is contrary to the intent of Congress.  The regulation would enable the Secretary to avoid consideration of "all the facts and circumstances" in section 6015(f) cases by imposing a 2-year period of limitations, the same period of limitations that

---

[11](...continued)
 otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--[five specific factors.] [Emphasis added.]

Congress specifically applied to section 6015(b) and (c) but omitted from subsection (f).[12]  However, a commonsense reading of section 6015 is that the Secretary has discretion to grant relief under section 6015(f) but may not shirk his duty to consider the facts and circumstances of a taxpayer's case by imposing a rule that Congress intended to apply only to subsections (b) and (c). See also Estate of Roski v. Commissioner, 128 T.C. 113, 128-129 (2007) (finding that where the Commissioner is required to exercise discretion, the Commissioner may not avoid this responsibility by imposing a universal rule that is contrary to the intent of Congress).

Congress's intent that the Secretary not have unfettered discretion in applying section 6015(f) is evidenced by its reinstatement of the Court's jurisdiction to review the Secretary's determinations in nondeficiency cases under section 6015(f).  In 2006 the Court of Appeals for the Ninth Circuit overturned a decision of this Court and held that the Tax Court does not have jurisdiction to review the Secretary's denial of relief under section 6015(f) in a case where no deficiency has been asserted.  Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004).

---

[12]Sec. 6015(f) requires the Secretary to take into account "all the facts and circumstances" in deciding whether to grant equitable relief.  However, we do not decide at this time whether a period of limitations that was longer than 2 years would run afoul of this requirement.

Soon after, the Court of Appeals for the Eighth Circuit took the same position.  <u>Bartman v. Commissioner</u>, 446 F.3d 785 (8th Cir. 2006), affg. in part and vacating T.C. Memo. 2004-93. Accordingly, the Court reversed its prior position and issued <u>Billings v. Commissioner</u>, 127 T.C. 7 (2006), construing section 6015(e) as not giving the Court jurisdiction over nondeficiency petitions filed under section 6015(f).

In response, in the TRHCA div. C, sec. 408, Congress reinstated our jurisdiction to review the Commissioner's determinations under section 6015(f) where no deficiency has been asserted.

While a taxpayer's delay in applying for relief under section 6015(f) is a factor to be considered in applying the "all the facts and circumstances" test of section 6015(f), the Secretary must be reasonable when creating restrictions that categorically exclude taxpayers from relief.  For example, in Rev. Proc. 2003-61, <u>supra</u>, the Secretary imposes a requirement that the requesting spouse must not have transferred property to the nonrequesting spouse as part of fraudulent scheme by the spouses in order to be eligible for relief under section 6015(f). However, unlike restrictions that exclude taxpayers who request relief after engaging in fraudulent activities, whether a taxpayer requests relief within 2 years of the IRS' first collection activity does not necessarily indicate whether it

would be equitable to grant the taxpayer relief. While we need not decide today whether any temporal limitation would be appropriate, it is clear from the omission of a 2-year limitations period in section 6015(f) that such a 2-year limitations period is impermissible.

    e. <u>No Tacit Congressional Approval</u>

Finally, respondent argues that under <u>Hanover Ins. Co. v. Commissioner</u>, 65 T.C. 715, 719-720 (1976), regulations and interpretations by the Secretary that have continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law. Respondent argues that the fact that Congress has amended section 6015(f) twice since the Secretary first imposed the 2-year limitations period shows that Congress has tacitly approved of the limitation. See Consolidated Appropriations Act, 2001, Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763A-640 (2000); TRHCA div. C, sec. 408.

While we agree with this general rule, we do not believe it applies here. First, the regulations in <u>Hanover</u> and the cases cited therein had been in place for at least 20 years, sometimes as long as 39 years. <u>Hanover Ins. Co. v. Commissioner</u>, <u>supra</u> at 716; see also <u>United States v. Correll</u>, 389 U.S. 299, 302 n.10 (1967); <u>Fribourg Navigation Co. v. Commissioner</u>, 383 U.S. 272, 279-280 nn.4&5 (1966); <u>Helvering v. Winmill</u>, 305 U.S. 79, 82

(1938).  Furthermore, regarding the regulations or interpretations at issue in <u>Hanover</u> and <u>Correll</u>, there was evidence that Congress had considered and rejected arguments against them.  See <u>United States v. Correll</u>, <u>supra</u> at 305 n.20 (Congress heard pleas for a change in the disputed rule but did not make the requested change); H. Conf. Rept. 99-841 (Vol. II), at II-357 (1986), 1986-3 C.B. (Vol. 4) 1, 357 (explicitly citing the regulation disputed in <u>Hanover</u>).

While 10 years may be long enough to treat Congress' inaction as tacit approval in some cases, such as where Congress is clearly aware of the disputed regulation and amends a portion of the related statute without superseding the regulation, the Commissioner has provided the Court with no indication that the application of the 2-year limitations period has been brought to Congress' attention or that Congress has considered whether the limitations period is valid.

It was not until 2003 that the Court first upheld the Commissioner's disallowance of relief under section 6015(f) because of the 2-year limitations period, <u>Campbell v. Commissioner</u>, 121 T.C. 290 (2003), and the Court has done so on only two other occasions, <u>Durham v. Commissioner</u>, T.C. Memo. 2004-184; <u>Hall v. Commissioner</u>, T.C. Memo. 2004-170.  In each case the requesting spouse appeared pro se, failed to challenge the validity of the regulation (or may not have been aware that

it existed), and did not appeal the Court's decision. In <u>Durham</u> we noted that the Court was not expressing an opinion on the validity of the rule, and the taxpayer would not have been entitled to relief even if she had satisfied the 2-year limitations period. In <u>Hall</u> we did not discuss the validity of the 2-year limitations period.

This situation is far different from the situation that prompted Congress to amend section 6015(f) in 2006. As discussed above, before Congress amended section 6015(e) to give the Court jurisdiction to review denial of relief under section 6015(f), the Court of Appeals for the Ninth Circuit overturned a decision of this Court on the issue, and this Court subsequently reversed its prior position. <u>Commissioner v. Ewing</u>, <u>supra</u>; <u>Billings v. Commissioner</u>, <u>supra</u>. The TRHCA was enacted less than a year after the Court of Appeals held that the Court did not have jurisdiction in such cases, and there is no evidence that the 2-year limitations period in section 1.6015-5(b)(1), Income Tax Regs., had been brought to Congress' attention. It seems that before petitioner raised the issue in this case, this rule was given very little attention in any forum. Accordingly, we do not believe that Congress' failure to overturn section 1.6015-5(b)(1), Income Tax Regs., amounts to a tacit approval of the 2-year limitations period.

7. <u>Conclusion</u>

Accordingly, we hold that section 1.6015-5(b)(1), Income Tax Regs., is an invalid interpretation of section 6015, and respondent abused his discretion by failing to consider all facts and circumstances in petitioner's case.  Further proceedings will be needed to fully determine petitioner's 1999 tax liability.

On the basis of the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.

Reviewed by the Court.

COLVIN, COHEN, WELLS, FOLEY, VASQUEZ, MARVEL, HAINES, WHERRY, KROUPA, GUSTAFSON, and PARIS, <u>JJ</u>., agree with this majority opinion.

GALE, <u>J</u>., dissents.

HALPERN, J., dissenting: Although I join the dissenting opinion of Judges Thornton and Holmes, I write separately to furnish what I believe to be another significant reason for rejecting the majority's conclusion that section 1.6015-5(b)(1), Income Tax Regs., is an impermissible interpretation of section 6015(f) and, therefore, invalid.

The 2-year period of limitations on requests for equitable relief under section 6015(f) promulgated in section 1.6015-5(b)(1), Income Tax Regs., is not the absolute temporal bar to relief that the majority assumes it to be. Section 301.9100-1(c), Proced. & Admin. Regs., gives the Commissioner discretion to "grant a reasonable extension of time under the rules set forth in § * * * 301.9100-3 to make a regulatory election" (9100 relief). Pursuant to section 301.9100-3(a), Proced. & Admin. Regs., requests for 9100 relief "will be granted" provided the taxpayer is able to establish that he or she "acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the Government", conditions which petitioner, presumably, is able to satisfy. The term "election" is broadly defined to include "an application for relief in respect of tax". Sec. 301.9100-1(b), Proced. & Admin. Regs.

The majority, in note 10 of its opinion, accepts the "mutual position" of the parties that 9100 relief is unavailable to extend the 2-year period of limitations under section 1.6015-

5(b)(1), Income Tax Regs., because, in the light of respondent's position to that effect, "any effort by petitioner to apply for [9100] relief * * * would be fruitless." In support of that position, the majority cites Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945), and Phillips Petroleum Co. v. Commissioner, 101 T.C. 78, 97 (1993), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995), for the proposition that an agency's interpretation of its own regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." The majority overlooks the fact that, in both of those cases, deference was afforded to agency interpretations issued in the form of published guidance (in Seminole Rock, a "bulletin" issued contemporaneously with the regulation and, in Phillips Petroleum, a published IRS Notice). Here, respondent's position is no more than a litigating position that, in my view, is without merit, or, in the language of Bowles v. Seminole Rock & Sand Co., supra at 414, "plainly erroneous" and "inconsistent with the regulation", which would cause its rejection in any event.

Nor do I agree with the majority's conclusion (also in note 10) that the procedures for requesting 9100 relief are so burdensome as to make that relief "practically" unavailable to putative innocent spouses. Section 301.9100-3(e)(2), Proced. & Admin. Regs., imposes a not unreasonable requirement that the individual seeking relief under section 6015(f) submit a

statement, albeit in affidavit form and under penalties of perjury, demonstrating that he or she acted reasonably and in good faith in failing to meet the regulatory deadline; and many, if not most, of the requirements for third-party affidavits and additional information set forth in section 301.9100-3(e)(3) and (4), Proced. & Admin. Regs., are of doubtful application to putative innocent spouses.  And although it is true that (1) a request for 9100 relief is treated as a request for a letter ruling, see sec. 301.9100-3(e)(5), Proced. & Admin. Regs., and (2) a request for a letter ruling generally must be accompanied by a great deal of information and documentary support, see Rev. Proc. 2009-1, sec. 7, 2009-1 I.R.B. 1, 16, much of the required information and documentation is not germane to requests for innocent spouse relief under section 6015(f), and substantial compliance with the need to furnish the balance of the required information and documentation will probably suffice.  See Militello v. Cent. States, Se. & Sw. Areas Pension Fund, 360 F.3d 681, 688-689 (7th Cir. 2004).

THORNTON and HOLMES, JJ., dissenting:  We agree with our colleagues that Chevron is the test we have to apply but respectfully disagree with their conclusion that the 2-year limitations period in section 1.6015-5(b)(1), Income Tax Regs., is invalid under either Chevron step 1 or step 2.

I.    Chevron:   Step 1

Chevron's step 1 asks "whether Congress has directly spoken to the precise question at issue."  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  The majority hears "audible silence" in the absence from section 6015(f) of the expressly stated 2-year deadlines of subsections (b) and (c).  Majority op. p. 14.  From this it concludes that Congress has foreclosed a 2-year, and possibly any, deadline for subsection (f) relief.

The majority likewise hears a whisper from the provision of section 6015(f)(2) that the Secretary may grant equitable relief to a spouse under subsection (f) only " `if * * * relief is not available to such individual under subsection (b) or (c)'".  See majority op. p. 14.  From this it similarly reasons that subsection (f) relief must be broader than relief under subsection (b) or (c); and since subsection (b) and (c) relief requires meeting a 2-year deadline, making subsection (f) relief broader requires that requests for subsection (f) relief not be subject to the same deadline.  Majority op. pp. 14-15.  (The majority does later admit, though, that "the timing of the

request for relief is not the only possible element by which subsection (f) relief would be broader than that of subsection (b) or (c)."  Majority op. p. 15.)

We agree with the majority that the precise question in this case is whether the Secretary can impose a 2-year limit on requests for relief under section 6015(f).  And we agree that the answer to this question depends on a close reading of the Code. But we disagree that the express time limits of subsections (b) and (c) denote or even imply that there can be no time limits in subsection (f), for congressional silence may simply be ambiguous.  See Crosby v. Natl. Foreign Trade Council, 530 U.S. 363, 388 (2000) ("The State's inference of congressional intent is unwarranted here, therefore, simply because the silence of Congress is ambiguous."); Burns v. United States, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

Subsection (f) differs markedly from subsections (b) and (c) in giving the Secretary discretion to grant relief where there is an underpayment of tax; i.e., where the joint return shows tax due that is not paid with the return.  When added to the Code in 1998, section 6015(f) was new and important and affected a lot of cases, since innocent spouse relief before section 6015(f) was limited to understatements; i.e., where the joint return shows less tax due than is owed.  See Butler v. Commissioner, 114 T.C.

276, 283 (2000).[1]  We think this suggests that it is the Secretary's discretion, and not the dilatory applicant's ability to request relief, that subsection (f) makes broad.

Consistent with this view, subsections (b) and (c) are mandatory subsections-if a taxpayer meets their requirements, the Secretary has to grant relief.  Section 6015(f), in contrast, is a permissive section--if a taxpayer follows the prescribed procedures, the Secretary "may relieve such individual of such liability."

This distinction is important in understanding the majority's discussion, majority op. pp. 25-27, of the Bureau of Prisons cases.  It relies on the Second, Third, Eighth, and Tenth Circuits' invalidation of 28 C.F.R. secs. 570.20 and 570.21-- regulations that categorically denied some prisoners the chance to serve their entire sentences in halfway houses.[2]  The problem these cases identified was 18 U.S.C. sec. 3621(b), which gave the BOP discretion over where to house inmates but required the agency to consider at least five listed factors.  All these Circuit Courts concluded that the BOP regulations categorically removed the agency's ability to consider these five listed

---

[1]We discuss Congress's intent in adding sec. 6015(f) in greater detail in our analysis of Chevron step 2, infra p. 45.

[2]See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).

factors for at least some individual prisoners.  That meant the challenged regulations stumbled on <u>Chevron</u> step 1.

But where is the similar mandatory consideration of any factor in the section of the Code we are looking at?  Section 6015(f) does not provide that "if, taking into account all the facts and circumstances, * * * the Secretary <u>shall</u> relieve such individual of such liability;" it provides that "if * * * taking into account all the facts and circumstances, * * * the Secretary <u>may</u> relieve such individual of such liability."  (Emphasis added.)  The distinction is an important one.  And it is the distinction at the heart of the Supreme Court's decision in <u>Lopez v. Davis</u>, 531 U.S. 230 (2001)-- the decision that, though mentioned briefly in the opinion, majority op. p 26--is much more similar to our case than the halfway-house cases on which the majority relies.

<u>Lopez</u> involved a different statute, 18 U.S.C. sec. 3621(e)(2)(B), providing that the prison time for an inmate convicted of a nonviolent crime "may be reduced by the Bureau of Prisons".  The BOP issued a regulation that categorically excluded prisoners who had possessed a firearm in connection with their crime; and an affected prisoner sued to invalidate the regulation, arguing that the statutory definition of a class of eligible inmates necessarily invalidated additional exclusions by regulation--he wanted case-by-case consideration.  <u>Lopez v. Davis</u>, <u>supra</u> at 239.  The Court rejected his argument.  In the

absence of express statutory language "the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably." Id. at 240.  The Court held that

> "Even if a statutory scheme requires individualized
> determinations," which this scheme does not, "the
> decisionmaker has the authority to rely on rulemaking
> to resolve certain issues of general applicability
> unless Congress clearly expresses an intent to withhold
> that authority." * * *

Id. at 243-244 (quoting Am. Hosp. Association v. NLRB, 499 U.S. 606, 612 (1991)).[3]

There is no withholding of such authority here--in contrast to the specific factors Congress told the Secretary to consider in deciding applications for relief under section 6015(b) and (c), it left relief under section 6015(f) to his discretion.  It chose to use "may" in section 6015(f) to grant wider discretion to the Secretary than it did in choosing "shall" in section 6015(b) and (c).  Read sensibly, section 6015(f) gives the

---

[3]Am. Hosp. Association v. NLRB, 499 U.S. 606, 612 (1991), decided whether the NLRB's obligation to decide the appropriate size of the collective bargaining unit "in each case", 29 U.S.C. sec. 159(b), meant that it had to exercise "standardless discretion in each case."  The answer was "no", because

> "[T]he principal instruments for regularizing the
> system of deciding 'in each case' are classifications,
> rules, principles, and precedents.  Sensible men could
> not refuse to use such instruments and a sensible
> Congress would not expect them to." * * *

Id. (quoting Davis, Administrative Law Text, sec. 6.04, at 145 (3d ed. 1972)).

Secretary the authority, but not the duty, to grant relief unavailable under section 6015(b) and (c).  And read in the context of delegations of authority to administrative agencies more generally, the statute gives the Secretary authority to issue rules and procedures instead of making case-by-case decisions as to the timeliness of requests for relief.

The majority also reads the statutory command to consider "<u>all</u> the facts and circumstances" (emphasis added) as forcing us to toss out the 2-year time limit, because such a strict deadline makes the time that it takes a spouse to request relief into a single, decisive fact or circumstance.  Yet section 6015(f), in a passage quoted but unconstrued by the majority, creates discretionary authority to provide equitable relief "Under procedures prescribed by the Secretary".

The question that the majority should have asked is whether setting a deadline is a "procedure"--if it is, then we have no business holding that the Secretary could not set one.  The first clue that the 2-year limit is a procedural requirement, and not just another one of the facts to be weighed in each case, is section 6015(b)(1)(D).  In that section, the Secretary is also told to take "into account all the facts and circumstances" in deciding whether it is "inequitable" to hold the requesting spouse jointly liable for a particular tax debt.  We have already held that the language of section 6015(f) does not significantly differ from this parallel language in section 6015(b).  <u>Alt v.</u>

Commissioner, 119 T.C. 306, 316 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Becherer v. Commissioner, T.C. Memo. 2004-282; Doyel v. Commissioner, T.C. Memo 2004-35.  And the equitable factors we consider under section 6015(b) are the same equitable factors we consider under section 6015(f).  Alt v. Commissioner, supra at 316.

That same section 6015(b) imposes the 2-year deadline for electing relief.  Sec. 6015(b)(1)(E).  We think this allowed the Secretary to infer that deadlines for seeking relief are just part of the procedural rules a taxpayer seeking relief must follow.  Read in this way, the language in section 6015(b)(1) and (f) giving the Secretary power to prescribe "procedures" is identical--except that the Secretary cannot set a deadline of other than 2 years for section 6015(b) relief.  The silence on deadlines in section 6015(f), seen in this light, is what courts since Chevron have construed to be an implicit delegation to the agency involved to fill the gap with its own construction.

Treating deadlines as procedural is the general rule in nontax administrative cases as well.  The Seventh Circuit--the court to which this case may be appealed--has already held that rules setting deadlines for seeking discretionary relief from immigration orders are procedural:

> are the time limits valid and, if so, * * * is the rule procedural and within the Attorney General's grant of authority?

We conclude that it is.  Section 1003.44(h) [the regulation setting the deadline] is similar to time limits imposed in the Federal Rules of Civil Procedure, Appellate Procedure, and even Criminal Procedure.  And, in general, the formulation of procedures is left to the discretion of the agencies with responsibility for substantive judgments.  Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519 * * * (1978).  We grant deference to agency interpretations of the law it administers.  Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 * * * (1984). * * *
     [Johnson v. Gonzales, 478 F.3d 795, 799 (7th Cir. 2007).]

See also, e.g., Foroglou v. Reno, 241 F.3d 111, 113 (1st Cir. 2001).

We finally note that the majority seems not to notice that the revenue procedure that currently guides the Secretary in the exercise of his discretion has seven threshold conditions--only one of which is the 2-year time limit--and a taxpayer who fails to meet any of them does not currently qualify for equitable relief.  If we peek into the future to see where the majority's reasoning might take us, we can't help but conclude that at least some of these other threshold conditions[4] will have to be invalidated as well.  Rev. Proc. 2003-61, sec. 4.01(4), 2003-2 C.B. 296, 297, for example, denies equitable relief to any spouse who transferred assets as "part of a fraudulent scheme".  This language matches section 6015(c)(3)(A)(ii)--and the majority's

---

[4]We say "some" because the list, Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297, includes some conditions that the Code itself requires, e.g., that the requesting spouse have filed a joint return and not be eligible for relief under sec. 6015(b) or (c).

reasoning would seem to bar the Secretary from stopping fraudsters at the threshold just as much as it would bar him from stopping the dilatory.

For all these reasons, we would hold that Congress has not directly spoken to the precise question of whether the Secretary may impose a deadline for requesting equitable relief. This leaves a gap, and we would therefore climb up to the second step of <u>Chevron</u>: is the 2-year limit "based on a permissible construction of the statute"? <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. at 843.

II. <u>Chevron: Step 2</u>

Step 2 of <u>Chevron</u>--whether the contested regulation is a permissible construction of the statute--rests fundamentally on the reasonableness of the choice made by the agency that issued the regulation. See, e.g., <u>Bankers Life & Cas. Co. v. United States</u>, 142 F.3d 973, 983 (7th Cir. 1998). In the Seventh Circuit, this step is also where a court will look to a provision's legislative history. See <u>id.</u> (we "lean toward reserving consideration of legislative history and other appropriate factors until the second <u>Chevron</u> step * * *. In the second step, the court determines whether the regulation harmonizes with the language, origins, and purpose of the

statute"); see also <u>Square D Co. & Subs. v. Commissioner</u>, 438 F.3d 739, 745 (7th Cir. 2006), affg. 118 T.C. 299 (2002).[5]

The legislative history is quite plain on this point, suggesting that what Congress wanted was primarily to extend relief to spouses with underpayments. The original House-passed version of the expanded relief provisions now found in section 6015(b) included no relief for underpayments. See H. Conf. Rept. 105-599, at 249-250 (1998), 1998-3 C.B. 747, 1003-1004. A Senate amendment would have provided limited relief in underpayment situations by making the separate liability election (now in section 6015(c)) applicable to underpayments. <u>Id.</u> at 250, 1998-3 C.B. at 1004. The conference committee omitted this aspect of the Senate amendment and instead gave the Secretary broad authority in subsection (f) to address such situations. The conference report explained:

> The conference agreement does not include the portion of the Senate amendment that could provide relief in situations where tax was shown on a joint return, but not paid with the return. The conferees intend that the Secretary will consider using the grant of authority to provide equitable relief in appropriate situations to avoid the inequitable treatment of spouses in such situations. * * * [<u>Id.</u> at 254, 1998-3 C.B. at 1008.]

---

[5]Whether to consider legislative history at step 1 or step 2 is a matter of some controversy. See <u>Coke v. Long Island Care at Home, Ltd.</u>, 376 F.3d 118, 127 n.3 (2d Cir. 2004) (collecting cases); see also <u>Tax Analysts v. IRS</u>, 350 F.3d 100, 103-104 (D.C. Cir. 2003); <u>Hosp. Corp. of Am. & Subs. v. Commissioner</u>, 348 F.3d 136, 144 (6th Cir. 2003), affg. 107 T.C. 73 (1996) and 107 T.C. 116 (1996). We put it here because the Seventh Circuit will be reviewing our decision in this case.

Although the conference report also indicated that this equitable relief was not to be limited to underpayment situations, the only other specific example involved a "spouse that does not know, and had no reason to know, that funds intended for the payment of tax were instead taken by the other spouse for such other spouse's benefit." Id. We find nothing in this legislative history suggesting that Congress wanted the Secretary to use his new discretion under subsection (f) to give relief to those who missed the statutory deadlines for relief under subsections (b) and (c).

An ounce of history is worth more than a pound of logic on this question, especially since the majority opinion does not even suggest that--quite apart from any legislative history--the 2-year regulatory deadline for requesting relief under subsection (f) is inherently unreasonable. Indeed, it cites with apparent approval an identical 2-year regulatory deadline that applies to comparable requests for equitable relief from joint and several liability under section 66(c) where a joint return is filed from a community property State.[6] And it seems to just assume

_____

[6]The majority seeks to make much of differing deadlines provided in the sec. 66(c) regulations for so-called traditional relief, for which the statute has made provision since 1984, and for "equitable relief", which Congress authorized in 1998 in the same legislation containing the sec. 6015 relief provisions. Seeming to hold out the sec. 66(c) regulations as a model of sorts, the majority asserts that these regulations provide a deadline for equitable relief that is "four times as long as the 6-month deadline for traditional relief under section 66(c)." Majority op. p. 22. The majority falls into error, however, by

(continued...)

that a 2-year regulatory deadline under subsection (f) is
unreasonable if it is the same as the statutory deadlines found in
subsections (b) and (c).

We do not share that assumption.  Drawing a negative
inference from subsection (f)'s lack of the 2-year deadlines found
in subsections (b) and (c) falls apart if applied to requests for
relief from underpayments, for which there is no statutory

---

[6](...continued)
misconstruing what it simplistically mischaracterizes as a "6-
month deadline" for requesting traditional relief under sec.
66(c).  The actual deadline for traditional relief under the sec.
66(c) regulations is:

> 6 months before the expiration of the period of
> limitations on assessment, including extensions,
> against the nonrequesting spouse for the taxable year
> that is the subject of the request for relief, unless
> the examination of the requesting spouse's return
> commences during that 6-month period.  If the
> examination of the requesting spouse's return commences
> during that 6-month period, the latest time for
> requesting relief * * * is 30 days after the
> commencement of the examination.  [Sec. 1.66-
> 4(j)(2)(i), Income Tax Regs.]

By contrast, the equitable relief deadline under sec. 66(c) is
the same as the equitable relief deadline under sec. 6015(f);
i.e., 2 years after the first collection activity.  It is not
accurate to say that the equitable relief deadline is four times
longer than the sec. 66(c) traditional relief deadline or, for
that matter, that they correlate according to any mathematical
ratio.  Indeed, the traditional relief deadline would seem no
more likely to fall on a date that is (as the majority suggests)
exactly 18 months before the equitable relief deadline than it
would be to fall on a date that is after the equitable relief
deadline.  In any event, we do not understand the majority to
suggest, nor do we understand how it plausibly could be
maintained, that the Secretary's prescribing a 2-year deadline
for requesting equitable relief under sec. 66(c) made it
unreasonable for the Secretary to prescribe the same 2-year
deadline for comparable requests for equitable relief arising
under sec. 6015(f).

deadline but only a delegation of authority to the Secretary. Holding that the Secretary cannot exercise his discretion to set a common deadline isn't a reasonable inference; it's the usurpation of the authority that Congress delegated to the Secretary, not us.

We would hold that the Secretary acted eminently reasonably in exercising his procedure-making authority by prescribing a deadline under subsection (f) that is comparable to the statutory deadlines under subsections (b) and (c) and identical to the regulatory deadline for equitable relief under section 66(c). Indeed, considerations of administrability strongly support consistent deadlines under these various provisions. Spouses filing requests for relief under either section 6015 or section 66(c) use the same Form 8857, Request for Innocent Spouse Relief. See Rev. Proc. 2003-61, sec. 5, 2003-2 C.B. at 299. Many if not most spouses requesting relief may be unsophisticated in the tax laws and may not fully appreciate which of the various provisions of section 6015 or section 66(c) might be most likely to benefit them. We doubt that most applicants seeking relief carefully parse the different categories for which they might qualify; more likely, they simply plead for whatever relief might be available.

In recognition of this reality, the Secretary's Form 8857 elicits information pertinent to all forms of relief under sections 6015 and 66(c) but does not require the requesting spouse to specify under which section or subsection relief is sought. Similarly, the regulations provide that a single claim for relief

will suffice for considering relief under section 6015 (b), (c), and (f). Sec. 1.6015-1(a)(2), Income Tax Regs. Having comparable deadlines for the various types of relief facilitates this sensible administrative practice. The majority would confound this practice in bizarre ways and place undue pressure upon the manner in which the request for relief might be drawn up or characterized.

For instance, the Court is today invalidating the regulatory deadline for equitable relief under subsection (f) but approving an identical regulatory deadline for equitable relief under section 66(c). The Court is also holding that a request for relief deemed to arise under subsection (b) or (c) remains subject to their 2-year statutory deadlines but may be considered under subsection (f) even if it misses those deadlines, with the untimeliness apparently to be taken into account as part of a facts-and-circumstances analysis.

By contrast, a request for relief deemed to arise under subsection (f)--for example, a request involving an underpayment, which cannot arise under subsection (b) or (c)--apparently would be subject to no deadline because the majority has invalidated the regulatory 2-year deadline under subsection (f). Although the majority states that "the taxpayer's delay in applying for relief under section 6015(f) is a factor to be considered in applying 'all the facts and circumstances' test of section 6015(f)", it declines to answer the obvious followup question of whether "any

temporal limitation would be appropriate". Majority op. pp. 29-30. Consequently, in the absence of any "temporal limitation", it is not apparent how "delay" in applying for subsection (f) relief should be identified or measured.

It would have been better to leave the regulation alone rather than create a tangle that will now take so much time to unravel.

We respectfully dissent.

HALPERN and MORRISON, JJ., agree with this dissenting opinion.