AUDREY MARIE HALL, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 30685–08.        Filed September 22, 2010.

The parties have entered into a stipulation that P is enti-
tled to relief under sec. 6015(f), I.R.C., but for the 2-year
limitation for claiming such relief under sec. 1.6015–5(b)(1),
Income Tax Regs. We must decide whether we will follow
*Lantz v. Commissioner*, 607 F.3d 479 (7th Cir. 2010), revg.
132 T.C. 131 (2009), in jurisdictions other than the Seventh
Circuit. The present case would normally be appealed to the
Court of Appeals for the Sixth Circuit. *Held*: We will continue
to take the position that sec. 1.6015–5(b)(1), Income Tax
Regs., is an invalid interpretation of sec. 6015(f), I.R.C.

*Ljubomir Nacev*, for petitioner.
*Emily J. Giometti*, for respondent.

OPINION

GOEKE, *Judge*: This case is before the Court on petitioner's
request for relief under section 6015(f).[1] We have jurisdiction
under section 6015(e).

The specific issue is whether petitioner is entitled to equi-
table relief under section 6015(f), notwithstanding her failure
to request such relief before the 2-year deadline imposed by
section 1.6015–5(b)(1), Income Tax Regs.

*Background*

The facts have been stipulated and are so found.

At the time of filing the petition, petitioner resided in Cin-
cinnati, Ohio. Petitioner and Etheridge Hall (Mr. Hall) were
married on October 9, 1965. Petitioner and Mr. Hall filed
joint Federal income tax returns for the tax years 1998 and
2001 (the years in issue). For the year 1998 petitioner
and Mr. Hall included a payment with their return but did
not pay the full amount due. For the year 2001 petitioner

---

[1] Unless otherwise noted, all section references are to the Internal Revenue Code in effect at
all relevant times.

and Mr. Hall filed a return but did not pay any of the amount due. However, since the filing of their 2001 return, petitioner and Mr. Hall made several payments for the tax year 2001, and the Internal Revenue Service (IRS) applied several credits to their account.

On April 17, 2003, petitioner and Mr. Hall divorced. Pursuant to their divorce decree, Mr. Hall had a legal obligation to pay his and petitioner's joint income tax liabilities. However, petitioner did not know at the time she filed her joint returns for the years at issue whether Mr. Hall would pay the tax due for said years.

On July 6, 2004, respondent initiated collection activity against petitioner and Mr. Hall's outstanding tax liabilities for the years 1998 and 2001 by issuing an intent to levy notice.

On August 1, 2008, petitioner signed and submitted to respondent Form 8857, Request for Innocent Spouse Relief, for her 1998 and 2001 tax years. On August 14, 2008, the IRS issued a preliminary determination denying petitioner relief under section 6015(f) for the years in issue because petitioner's claim was not filed within the 2-year period. On or about August 22, 2008, petitioner filed a Form 12509, Statement of Disagreement, protesting the IRS' denial of innocent spouse relief and stating that she was not aware that collection activity had been initiated against her. In addition, petitioner stated in her Form 12509 that the "statements" she had received "always had on the statement * * * [that] I had two years to call. * * * If your [sic] telling me I [was] suppose to do this last year, I'm still receiving statements saying I still have two years. Could you explain this please."

By letter dated September 10, 2008, respondent's Appeals Office acknowledged receipt of petitioner's case for consideration and informed petitioner of the Appeals officer assigned to it.

On November 17, 2008, the Appeals officer held a conference with petitioner at which she was informed that the IRS could not grant her relief because she had not timely filed her request. The Appeals officer explained that the IRS had issued a collection notice to her on July 6, 2004, and petitioner was required to file a Form 8857 by July 6, 2006; the Form 8857 was received on July 31, 2008, making the request untimely. On November 20, 2008, respondent issued a final Appeals determination denying petitioner relief from

joint and several liability under section 6015(f) for the years at issue.

On December 22, 2008, petitioner timely petitioned this Court, contesting respondent's denial of relief.

On November 5, 2009, respondent sent petitioner's case to the Cincinnati Centralized Innocent Spouse Operations Unit to reconsider the merits of her request. The result was again denial of relief. However, in a stipulation of settled issues, dated June 1, 2010, respondent agreed that "petitioner would be entitled to equitable relief on the merits" if her request had been timely. Petitioner agreed in the same stipulation of settled issues that she had submitted her request more than 2 years after collection activities had commenced.

## *Discussion*

This case presents the same issue as this Court's Opinion in *Lantz v. Commissioner*, 132 T.C. 131 (2009), revd. 607 F.3d 479 (7th Cir. 2010). In that case this Court held that the 2-year limitation imposed by section 1.6015–5(b)(1), Income Tax Regs., is an invalid interpretation of section 6015(f). The Court of Appeals for the Seventh Circuit reversed this holding, finding that the regulation was within the Secretary's discretion to prescribe procedures for the application of section 6015(f). Appeal of this case would normally lie to the Court of Appeals for the Sixth Circuit, so the rule of deference is not applicable. See *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). However, given the reversal of *Lantz*, it is appropriate that this Court revisit the issue.

### I. *Seventh Circuit Analysis*

The Court of Appeals for the Seventh Circuit in *Lantz* held that "audible silence" was not a guide to congressional meaning because there was nothing unusual in the fact that Congress chose not to include a statute of limitations in section 6015(f). The Court of Appeals noted that courts often borrow statutes of limitations from other laws and that Congress was aware that agencies often make up their own deadlines through regulations.

The Court of Appeals also held that while the doctrine of laches might substitute for the lack of a statute of limitations

in a situation applying equitable principles, it cannot do so for section 6015(f). The Court of Appeals reasoned that if section 6015(f) has no strict deadline, "the two-year deadlines in subsections (b) and (c) will be set largely at naught because the substantive criteria of those sections are virtually the same as those of (f)." *Lantz v. Commissioner*, 607 F.3d at 484.

Finally, the Court of Appeals noted that section 6015(f) is a safety valve by which the IRS *may* grant relief to a taxpayer under regulations prescribed by the Secretary. Because Congress authorized the Secretary to grant discretionary relief under procedures that the Secretary was to devise, the court held that judicial deference to the regulation was required and the Secretary was empowered to set a deadline for applying for section 6015(f) relief. *Id.* at 486.

The analysis by the Court of Appeals concluded with the recognition that the result was "harsh" but suggested Mrs. Lantz might be provided relief under section 6343(a)(1)(D). *Id.*

## II. *Procedural Rule*

In *Lantz v. Commissioner*, 607 F.3d at 483, the Court of Appeals recognized that equity traditionally did not include a strict "statute of limitations"; but as stated previously, the Court of Appeals rejected "laches" as a means to apply section 6015(f). Traditionally, in cases of equity there was no statute of limitations, but delay in filing a claim was considered as a factor in deciding whether equity would be served by granting relief. *Id.* By adopting a statute of limitations, the Court of Appeals accepted that cases invoking inequitable circumstances will be denied relief without considering the facts and circumstances. The cause of the delay in filing and the circumstances, no matter how extreme, are irrelevant. The Court of Appeals rejected the traditional method to address delay in the equity context because of subsections (b) and (c) of section 6015 and the 2-year limitations provision in those subsections, which it found supports the use of the 2-year standard for subsection (f). [2]

---

[2] Sec. 6015(b), (c), and (f) provides as follows:

SEC. 6015(b). PROCEDURES FOR RELIEF FROM LIABILITY APPLICABLE TO ALL JOINT FILERS.—
    (1) IN GENERAL.—Under procedures prescribed by the Secretary, if—

Continued

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) APPORTIONMENT OF RELIEF.—If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

(3) UNDERSTATEMENT.—For purposes of this subsection, the term "understatement" has the meaning given to such term by section 6662(d)(2)(A).

SEC. 6015(c). PROCEDURES TO LIMIT LIABILITY FOR TAXPAYERS NO LONGER MARRIED OR TAXPAYERS LEGALLY SEPARATED OR NOT LIVING TOGETHER.—

(1) IN GENERAL.—Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

(2) BURDEN OF PROOF.—Except as provided in individual subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this subsection shall have the burden of proof with respect to establishing the portion of any deficiency allocable to such individual.

(3) ELECTION.—

(A) INDIVIDUALS ELIGIBLE TO MAKE ELECTION.—

(i) IN GENERAL.—An individual shall only be eligible to elect the application of this subsection if—

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

(ii) CERTAIN TAXPAYERS INELIGIBLE TO ELECT.—If the Secretary demonstrates that assets were transferred between individuals filing a joint return as part of a fraudulent scheme by such individuals, an election under this subsection by either individual shall be invalid (and section 6013(d)(3) shall apply to the joint return).

(B) TIME FOR ELECTION.—An election under this subsection for any taxable year may be made at any time after a deficiency for such year is asserted but not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election.

(C) ELECTION NOT VALID WITH RESPECT TO CERTAIN DEFICIENCIES.—If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

(4) LIABILITY INCREASED BY REASON OF TRANSFERS OF PROPERTY TO AVOID TAX.—

(A) IN GENERAL.—Notwithstanding any other provision of this subsection, the portion of

The Court of Appeals' application of the 2-year limits in subsections (b) and (c) makes subsection (f) ineffective in situations where an innocent spouse is unaware of the need to or unable to contact the IRS for some of the very reasons that Congress considered in enacting section 6015. For example, a spouse is sometimes subject to abuse by a partner. The abuse can take many forms. Where a spouse is prevented from acting by fear, intimidation, or fraud, an administrative procedural hurdle would eliminate consideration of relief by the IRS. The Secretary did not allow any exception even for extreme cases, but rather adopted a strict time bar that requires the IRS to deny relief without any consideration of the facts and circumstances. See sec. 1.6015–5(b)(1), Income Tax Regs. In our view, a regulation which rejects claims for relief without considering the facts and circumstances is contrary to the specific statutory requirement that all the facts and circumstances be taken into account. *Lantz v. Commissioner*, 132 T.C. at 147. We concluded that the regulation, which bars relief from inequity solely upon the ground that it was requested beyond a specified period, failed to consider all the facts and circumstances. *Id.* at 150.

Respondent contends that this is a procedural rule clearly within the Secretary's discretion. However, a time bar is not simply a procedural rule. In the case of equity, it has the

---

the deficiency for which the individual electing the application of this subsection is liable (without regard to this paragraph) shall be increased by the value of any disqualified asset transferred to the individual.

(B) DISQUALIFIED ASSET.—For purposes of this paragraph—

(i) IN GENERAL.—The term "disqualified asset" means any property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax.

(ii) PRESUMPTION.—

(I) IN GENERAL.—For purposes of clause (i), except as provided in subclause (II), any transfer which is made after the date which is 1 year before the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or payment of tax.

(II) EXCEPTIONS.—Subclause (I) shall not apply to any transfer pursuant to a decree of divorce or separate maintenance or a written instrument incident to such a decree or to any transfer which an individual establishes did not have as its principal purpose the avoidance of tax or payment of tax.

SEC. 6015(f). EQUITABLE RELIEF.—Under procedures prescribed by the Secretary, if—

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

substantive effect of making one circumstance, the time of the claim, the only relevant factor. The statute requires consideration of all facts and circumstances to decide whether there is inequity. Sec. 6015(f). Specifying a period not provided in the statute overrides all the other potential causes of inequity and is fundamentally inconsistent with the language and purpose of the statute.

### III. *Subsection (f) in the Context of Subsections (b) and (c)*

The relationship of subsections (b) and (c) to subsection (f) is fundamental to the issue before us. The Court of Appeals found that without a 2-year statute of limitations for subsection (f), the limitations for subsections (b) and (c) are made ineffective. *Lantz v. Commissioner*, 607 F.3d at 484. Therefore, the Court of Appeals held that silence in subsection (f) did not support a different rule but rather that the context of subsection (f) after subsections (b) and (c) required the same rule. *Id.* at 484–485. We believe the Court of Appeals' opinion overlooks the very specific and different purpose of subsection (f).[3]

As applied by the IRS in Rev. Proc. 2003–61, 2003–2 C.B. 296, subsection (f) requires a decision about whether collecting a joint liability yields an inequitable result. The revenue procedure and this Court have consistently looked beyond the taxable year at issue to apply subsection (f). The facts relevant to subsections (b) and (c) are primarily those of the taxable year in issue and whether the party claiming relief is liable for a joint deficiency. In the case of subsection (f), relief from the deficiency under subsections (b) and (c) is not available and underpaid taxes already assessed on the basis of the joint return as filed are possibly subject to relief. Rev. Proc. 2003–61, secs. 4.01(2), 4.02, 4.03, 2003–2 C.B. at 297–298. While facts from the year the return was filed may be relevant in applying subsection (f), those facts are not exclusive. The application of subsection (f) also depends on current economic hardship and marital circumstances after the year of the joint liability. *Id.* sec. 4.03(2)(a)(i) and (ii), 2003–2 C.B. at 298. Such circumstances are to be weighed

---

[3] In an article addressing the question whether the 2-year rule should apply to sec. 6015(f), Professor Bryan T. Camp argues that subsec. (f) has a different role from that of subsecs. (b) and (c) and that application of the 2-year rule from subsecs. (b) and (c) to subsec. (f) is not appropriate. Camp, "Interpreting Statutory Silence", 128 Tax Notes 501 (Aug. 2, 2010).

together with the events during the year in question, and no one factor is determinative. *Id.* The consideration of contemporaneous circumstances distinguishes subsection (f) analysis from the taxable year factual analysis required under subsections (b) and (c).

## IV. *Deference*

The IRS, faced with serious budget constraints, must handle many claims for relief, and we appreciate that some recognition of the timeliness of claims is necessary. But a refusal to consider or outline exceptional circumstances runs squarely contrary to the statutory mandate to prevent inequity. The need for expediency and the concern with drafting a rule that reconciles subsections (b), (c), and (f) of section 6015 effectively are not valid reasons for the Secretary to ignore the statutory mandate to prevent inequity. The Secretary has wide latitude to implement section 6015(f) but does not have carte blanche to ignore the purpose and defeat the application of the section for a substantial number of otherwise deserving taxpayers.

The Court of Appeals in *Lantz v. Commissioner*, 607 F.3d at 485, cites *Lopez v. Davis*, 531 U.S. 230, 238 (2001), and asks the rhetorical question:

Since the government can refuse to grant equitable relief to someone who meets the statutory criteria and applies within two years of the first collection action, why can't it decide to deny relief to a *class* of applicants defined as those who waited too long? * * *

If we can suggest an answer, it would be to consider two features of section 6015 (e) and (f). Section 6015(f) imposes a requirement that "all the facts and circumstances" be considered in a determination of whether the collection of the joint tax liability will result in inequity, and section 6015(e) provides for judicial review of that determination as a matter of right. The Secretary has written a regulation that eliminates consideration of all the facts and circumstances. There is no doubt there will be situations where denial of an untimely request will be inequitable because the party seeking relief was denied access to the necessary information by a malicious or deceitful spouse. As indicated, the IRS recognizes post-taxable-year facts are relevant under subsection (f) that are not otherwise relevant under subsections (b) and (c). This

recognition establishes that insisting on a statute of limitations in subsection (f) based upon subsections (b) and (c) is a false premise. Congress intended a broader role for subsection (f), and the IRS has long recognized this in revenue procedures. The Court of Appeals' question and later discussion recognized that harsh and inequitable results are likely under *Lantz*. We simply disagree that such results are allowable within a reasonable interpretation of the statute and the related congressional intent.

## V. *Standard of Review*

Applying the law of the Court of Appeals for the Sixth Circuit, to which an appeal in this case would lie, we must apply the analysis of *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984), to the regulation at issue. *Hosp. Corp. of Am. & Subs. v. Commissioner*, 348 F.3d 136, 140 (6th Cir. 2003), affg. 107 T.C. 73 and 107 T.C. 116 (1996).

For the reasons we stated in *Lantz v. Commissioner*, 132 T.C. at 137, we hold that section 1.6015–5(b)(1), Income Tax Regs., fails both prongs of the *Chevron* test.

## VI. *Section 6343*

With all due respect to the Court of Appeals for the Seventh Circuit's reference to section 6343(a)(1)(D), that section was enacted before section 6015(f); and if Congress had found it sufficient, presumably section 6015(f) would not have been enacted. One difference is that section 6343(a)(1)(D) may apply if economic hardship is present; section 6015(f) may apply on more general equitable grounds. In addition, there is a practical problem: the Internal Revenue Manual provides little direction to IRS employees regarding application of economic hardship to case decisions. National Taxpayer Advocate, 2008 Annual Report to Congress (Vol. 1) 21–22 (2008). Additionally, in many cases the IRS does not consider the loss of a taxpayer's home and retirement assets an economic hardship. National Taxpayer Advocate, Report to Congress, Fiscal Year 2009 Objectives, at xxxvi (2008).

VII. *Conclusion*

Respondent's practice in this and similar cases has been to agree that the taxpayer is entitled to relief if the regulation is deemed invalid. Respondent has chosen not to inquire whether petitioner's delay was not excusable and whether the delay is a factor favoring the denial of relief based upon a facts and circumstances test. For the reasons explained hereinbefore, we determine that,

*Decision will be entered for petitioner.*

Reviewed by the Court.
COLVIN, COHEN, WELLS, MARVEL, WHERRY, KROUPA, and PARIS, *JJ.*, agree with this majority opinion.

———————

WELLS, *J.*, concurring: I agree with the majority that the period of limitations provided in section 1.6015–5(b)(1), Income Tax Regs., is invalid. I write separately to advance an additional reason I think the regulation is invalid.

By regulation, the Commissioner is attempting to place an absolute, ironclad 2-year limitations period on making a request for equitable relief under section 6015(f), even though section 6015(f) contains no limitations period. The majority opinion properly characterizes respondent's position in this case and the opinion of the Court of Appeals for the Seventh Circuit in *Lantz v. Commissioner*, 607 F.3d 479 (7th Cir. 2010), revg. 132 T.C. 131 (2009), as follows:

> By adopting a statute of limitations, the Court of Appeals accepted that cases invoking inequitable circumstances will be denied relief * * * [regardless of] the facts and circumstances. *The cause of the delay in filing and the circumstances, no matter how extreme, are irrelevant.* The Court of Appeals rejected the traditional method to address delay in the equity context because of subsections (b) and (c) of section 6015 and the 2-year limitations provision in those subsections which it found supports the use of the 2-year standard for subsection (f). [Majority op. p. 377; emphasis added; fn. ref. omitted.]

I believe that respondent's position in this case and the Court of Appeals' opinion in *Lantz* are contrary to the purpose of section 6015(f), which is "to provide equitable relief in appropriate situations". H. Conf. Rept. 105–599, at 251 (1998), 1998–3 C.B. 747, 1005. In addition to the reasons

already stated in the majority opinion and in our *Lantz* Opinion, [1] I believe that the regulation, which provides no exceptions to the 2-year period for extraordinary circumstances, is contrary to the concept of "equitable tolling". [2] Respondent has stipulated that petitioner is entitled to relief under section 6015(f) if her claim is timely. Respondent refuses to consider *any* facts regarding the 2-year limit; i.e., we should just count the days and ignore the facts. Respondent's position appears to be that if the absolute 2-year rule is valid, respondent prevails; and, if the 2-year rule is not valid, petitioner prevails. On that basis, petitioner should prevail.

The specific purpose of section 6015(f) is to provide equitable relief, and a fundamental form of equitable relief is to relieve a party from strict compliance with a limitations period when the failure to take timely action was due to extraordinary circumstances. This form of equitable relief is known as "equitable tolling". [3] On June 14, 2010, the Supreme Court articulated the principles of equitable tolling that would apply to provide relief even from a very specific period of limitations imposed by statute. In *Holland v. Florida*, 560 U.S. \_\_\_\_, \_\_\_\_, 130 S. Ct. 2549, 2560 (2010), the Supreme Court stated:

> We have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a "rebuttable presumption" in *favor* "of equitable tolling." *Irwin*, 498 U.S., at 95–96; see also *Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling"'" (quoting *Irwin*, *supra*, at 95)).

The dissent in *Holland v. Florida*, *supra* at \_\_\_\_, 130 S. Ct. at 2569 (Scalia, J., dissenting) agreed with these principles:

[1] I do not believe that either the majority opinion or our Opinion in *Lantz v. Commissioner*, 132 T.C. 131 (2009), revd. 607 F.3d 479 (7th Cir. 2010), stands for the proposition that there can be *no* period of limitations under sec. 6015(f).

[2] Judge Gustafson in his concurring opinion suggests that I am invoking the "doctrine of 'equitable tolling'". Concurring op. note 2. However, I actually have chosen not to use the term "doctrine" here, because I am referring only to the principles of equitable tolling. I believe that respondent's failure to incorporate any relief from his strict 2-year regulatory limitations period for extraordinary circumstances is improper because it is contrary to the equitable "principles" underlying equitable tolling. I do suggest *infra* note 5 that the "doctrine" of equitable tolling would apply in the event the regulation in question were to be held valid.

[3] An additional, but similar, form of equitable relief may be available; i.e., "equitable estoppel". Equitable estoppel applies when one of the litigants does something to prevent the other from making a timely claim. See *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 852 (7th Cir. 1996) (difference between equitable tolling and equitable estoppel discussed).

The Court is correct, *ante*, at * * * [130 S. Ct. at 2560–2561], that we ordinarily presume federal limitations periods are subject to equitable tolling unless tolling would be inconsistent with the statute. *Young v. United States*, 535 U.S. 43, 49 (2002). That is especially true of limitations provisions applicable to actions that are traditionally governed by equitable principles—a category that includes habeas proceedings. See *id.*, at 50. * * *

In holding that the principle of equitable tolling was applicable, in spite of a limitations period that was specifically spelled out in the statute, the Supreme Court distinguished its prior holding in *United States v. Brockamp*, 519 U.S. 347 (1997), which held that equitable tolling was not applicable to the period of limitations on tax refunds provided in section 6511. In *Holland*, the Supreme Court noted that in *Brockamp* it had interpreted the section 6511 limitations period as foreclosing application of that doctrine but had emphasized that section 6511:

(1) "se[t] forth its time limitations in unusually emphatic form"; (2) used "highly detailed" and "technical" language "that, linguistically speaking, cannot easily be read as containing implicit exceptions"; (3) "reiterate[d] its limitations several times in several different ways"; (4) related to an "underlying subject matter," nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, "require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery— a kind of tolling for which we . . . found no direct precedent." * * * [*Holland v. Florida*, *supra* at ____, 130 S. Ct. at 2561, quoting *United States v. Brockamp*, *supra* at 350–352.]

Four of the five factors that were used to decide that equitable tolling did not apply to section 6511 are absent in section 6015(f) or the regulation; the only common factor present in both section 6015(f) and section 6511 is that both involve Federal tax. A major distinction between the two statutes is that section 6511 provides exclusively a limitations period, while section 6015(f) does not even mention a limitations period.

An equally compelling argument that equitable tolling principles should be considered in any reasonable regulatory limitations period that might apply to section 6015(f) relief is that the specific statutory purpose of section 6015(f) is to avoid inequity. Moreover, section 6015(f) itself was enacted during 1998 in conjunction with section 6511(h). Section 6511(h) effectively overruled the result reached by the

Supreme Court in *Brockamp* and allowed for equitable tolling of the section 6511 limitations period when taxpayers were unable to manage their financial affairs. Indeed, section 6015(f) was enacted in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105–206, sec. 3201, 112 Stat. 734, and section 6511(h) was enacted in RRA 1998 sec. 3202, 112 Stat. 740, the very next section of the same act. The two sections were packaged together in the conference committee report under the heading "Relief for Innocent Spouses and for Taxpayers Unable to Manage Their Financial Affairs Due to Disabilities". H. Conf. Rept. 105–599, *supra* at 249, 1998–3 C.B. at 1003. Both of those provisions were considered and enacted as part of the same bill. It seems clear that Congress would not have provided for equitable tolling in section 6511(h) and then simultaneously allowed the Commissioner to disregard equitable tolling principles in the companion statutory provision that gives the Commissioner and the Tax Court the power to avoid inequitable results by considering all the facts and circumstances. [4]

In *Pollock v. Commissioner*, 132 T.C. 21 (2009), we considered whether equitable tolling could extend the 90-day period provided by section 6015(e) for filing a petition in this Court. We held that the filing period in section 6015(e) was not susceptible to equitable tolling because it was jurisdictional. We stated:

The most important point to notice is that the Code here actually uses the word "jurisdiction"—giving us "jurisdiction" if someone files her petition within the 90-day time limit. Statutes granting a court "jurisdiction" if a case is filed by a stated deadline look more like jurisdictional time limits. *Zipes*, 455 U.S. at 393–94.

\*     \*     \*     \*     \*     \*     \*

---

[4] Disregarding this legislative history, in his brief to the Court of Appeals for the Seventh Circuit in *Lantz v. Commissioner*, 607 F.3d 479 (7th Cir. 2010), revg. 132 T.C. 131 (2009), the Commissioner argued, quoting the dissent in this Court, that there is no "indication in the legislative history that in devising § 6015(f), Congress was concerned with giving taxpayers a longer time within which to seek relief" and that "'[we] find nothing in this legislative history suggesting Congress wanted the Secretary to use his new discretion under subsection (f) to give relief to those who missed the statutory deadlines for relief under subsections (b) and (c).'" The Court of Appeals expressed "doubt that Congress would want to preclude the Treasury from imposing a deadline designed to reduce the flow to manageable proportions." *Id.* at 486. The legislative history quoted above would support a contrary view.

Courts also commonly distinguish statutes of limitation from jurisdictional deadlines by the complexity of a statute's language. *Brockamp*, 519 U.S. at 350–51. * * *

* * * * * * *

Statutes of limitation, on the other hand, have no such jurisdictional identifiers, and courts construe them with a presumption that they were written against a backdrop of legal default rules and doctrines that they can legitimately apply when the statute is silent and the facts of a particular case warrant it. And one of these default rules, as the Supreme Court recently clarified, is a rebuttable presumption in favor of equitable tolling's availability in suits brought by a private party against the Government. *John R. Sand & Gravel Co.*, 552 U.S. at 136–138.

[*Id.* at 30–32; fn. ref. omitted.]

In *Pollock*, we discussed the crucial distinction between a mere period of limitations and a jurisdictional limitation:

This gets us directly to the Commissioner's most compelling point—that the District Court misconstrued section 6015's 90-day deadline to be a statute of limitations rather than a jurisdictional requirement. This distinction is crucial: A statute of limitations simply prescribes a period in which a court may enforce certain rights. *Young v. United States*, 535 U.S. 43, 47 (2002). Courts may equitably toll them unless it would be inconsistent with the particular terms of the relevant statute. *Id.* at 49; *John R. Sand & Gravel Co.*, 552 U.S. at 133. They "protect a defendant's case-specific interest in timeliness," *John R. Sand & Gravel Co.*, 552 U.S. at 133, and courts may be able to look past delay because a limitations period is, like other affirmative defenses, subject to exceptions such as waiver, estoppel—or equitable tolling, *Zipes*, 455 U.S. at 393; *In re Intl. Admin. Servs., Inc.*, 408 F.3d 689, 701 (11th Cir. 2005). [*Id.* at 28–29.]

I do not believe that anyone could reasonably claim that the regulation providing a 2-year limitations period in section 1.6015–5(b)(1), Income Tax Regs., is a restriction on our jurisdiction to review the Commissioner's denial of section 6015(f) relief.

I believe that the foregoing analysis supports the conclusion in the majority opinion and provides an additional basis for invalidating the regulation.[5]

COLVIN, COHEN, GOEKE, WHERRY, and KROUPA, *JJ.*, agree with this concurring opinion.

---

[5] Even if the period of limitations in sec. 1.6015–5(b)(1), Income Tax Regs., is valid, I believe that such a period of limitations would be subject to the "doctrine" of equitable tolling. In that regard, the "doctrine" of equitable tolling may apply if the litigant can prove that (1) the litigant has been pursuing the litigant's rights diligently, and (2) that some extraordinary circumstance stood in the litigant's way and prevented timely filing. *Holland v. Florida*, 560 U.S. ____, ____, 130 S. Ct. 2549, 2562 (2010). The facts before us include a statement that petitioner was advised by respondent that she still had 2 years to make her claim.

GUSTAFSON, *J.*, concurring: I concur with the result reached by the majority—i.e., that the two-year deadline imposed in 26 C.F.R. section 1.6015–5(b)(1), Income Tax Regs., is invalid. I part company with the majority only in aspects of its rationale that do not affect the outcome (discussed in parts I–III below); and I still conclude—for the reasons that we stated in *Lantz v. Commissioner*, 132 T.C. 131, 138–144 (2009), revd. 607 F.3d 479 (7th Cir. 2010), and that I summarize below in part IV—that the IRS's two-year deadline is invalid because it is at odds with the congressional intent evident in the statute.

## I. *"[A]ll the facts and circumstances"*

The majority states today: "the regulation, which bars relief from inequity solely upon the ground that it was requested beyond a specified period, failed to consider all the facts and circumstances", for purposes of section 6015(f)(1). Majority op. p. 379.[1] This reasoning would apparently disallow the Internal Revenue Service (IRS) from imposing by regulation *any* set deadline for filing requests for equitable relief from joint liability under section 6015(f), because any set deadline, when applied, would "mak[e] one circumstance, the time of the claim, the only relevant factor", majority op. p. 380, rather than having "all the facts and circumstances" govern the outcome.

However, the Internal Revenue Code is replete with "facts and circumstances" provisions that are subject to procedural deadlines. Nearby section 6015(b)(1)(D) has identical language ("taking into account *all* the facts and circumstances, it is inequitable" (emphasis added)), but the relief provided in section 6015(b) depends on an election's being made before a two-year deadline. Sec. 6015(b)(1)(E). That is, under section 6015(b) Congress both required that "all the facts and circumstances" be taken into account *and* provided in effect that, if an election was not made within two years, the single fact of timing would govern the outcome. The "all the facts and circumstances" provision in section 6015(f) thus does not, in and of itself, preclude a deadline for an equitable claim.

---

[1] For this "facts and circumstances" proposition the majority cites our Opinion in *Lantz v. Commissioner*, 132 T.C. 131, 150 (2009), revd. 607 F.3d 479 (7th Cir. 2010). We did not explicitly so state in *Lantz*.

Consequently, I conclude that a statute may provide a substantive standard for equitable relief that takes into account "all the facts and circumstances" while, at the same time, providing or permitting a procedural deadline for the submission of a request for that relief.

## II. *"Equitable Relief"*

The majority observes critically that the Court of Appeals for the Seventh Circuit "rejected 'laches'", majority op. p. 377 citing *Lantz v. Commissioner*, 607 F.3d at 483; and the majority thereby seems to edge toward the position (not taken by this Court in *Lantz*) that the "Equitable Relief" of section 6015(f) embodies concepts of equity, as opposed to law. At law, time limits are expressed in statutes of limitation; but equity jurisprudence developed instead the more flexible defense of laches (prejudicial delay) and the doctrine of "equitable tolling" of statutes of limitation,[2] concepts that would arguably be more congruent with the congressional purpose behind section 6015(f) than the IRS's blunt application of the two-year rule of its regulation.

However, the title "Equitable Relief" does not warrant the conclusion that laches or equitable tolling inhere in section 6015(f) to the exclusion of a regulation that provides an explicit limitations period. The word "equitable" may sometimes implicate the law-equity distinction;[3] but usually the word "equity" means simply justice or fairness, "equitable" means just or fair,[4] and "inequitable" means unjust or

---

[2] Judge Wells's concurring opinion explains that the doctrine of "equitable tolling" may "relieve a party from strict compliance with a limitations period when the failure to take timely action was due to extraordinary circumstances." Concurring op. p. 384. This raises an interesting question—i.e., whether the doctrine of equitable tolling would apply to a nonjurisdictional two-year limitations period like that in 26 C.F.R. section 1.6015–5(b)(1), Income Tax Regs. It appears that if the doctrine were pertinent here, then it would not invalidate the two-year deadline (since equitable tolling can happen only when there is a (valid) deadline to toll) but instead would *toll* the deadline. The doctrine of equitable tolling might thus save the otherwise invalid regulation, by making the nonjurisdictional two-year regulatory limitation of section 6015(f) subject to being tolled by equitable considerations that are inapplicable to the jurisdictional two-year statutory limitation of section 6015(b) and (c). However, the parties did not brief the subject of equitable tolling, so we have an insufficient basis for addressing this question.

[3] See, e.g., secs. 3232 ("civil actions, whether legal or equitable in nature"), 6214(b) ("equitable recoupment"), 6305(b) ("legal or equitable"), 6402(g) ("legal or equitable", "legal, equitable, or administrative").

[4] See, e.g., secs. 417(f)(4) ("A plan may take into account in any equitable manner (as determined by the Secretary) any increased costs"), 2205 ("entitled to reimbursement * * * by a just and equitable contribution"), 4975(d)(22)(H) ("fair and equitable"), 9037(b) ("equitable distribution of funds"); Internal Revenue Service Restructuring and Reform Act of 1988, Pub. L. 105–
Continued

unfair. [5] Those common meanings are appropriate here, for reasons stated by dissenting Judges Thornton and Holmes. See dissenting op. pp. 391–392. The "equitable" vocabulary of section 6015(f) does not implicitly or explicitly prohibit a regulatory deadline.

III. *"[P]rocedures prescribed by the Secretary"*

Section 6015(f) provides that equitable relief is to be administered "[u]nder procedures prescribed by the Secretary", and the IRS promulgated the regulatory deadline under this authority; but the majority states that "a time bar is not simply a procedural rule." Majority op. p. 379. In this context, however, a deadline *is* a "procedure": Congress placed the two-year deadline of section 6015(b)(1)(E) under the *"Procedures* For Relief From Liability Applicable to All Joint Filers"; and it placed the two-year deadline of section 6015(c)(3)(B) under the *"Procedures* To Limit Liability for Taxpayers No Longer Married". (Emphasis added.) Congress thus suggested that a time limit might be one of the "procedures" for granting relief, and it authorized the IRS to promulgate "procedures" for the "Equitable Relief" provision of section 6015(f). See also *Lantz v. Commissioner*, 132 T.C. at 155–156 (Thornton and Holmes, JJ., dissenting). I think it cannot be said that Congress prohibited the IRS from promulgating *any* deadline for applying for equitable relief.

IV. *"[R]elief * * * not available * * * under subsection (b) or (c)"*

If, as I conclude, section 6015(f) permits and authorizes the IRS to promulgate by regulation a deadline for taxpayers who request equitable relief, then the remaining issue is whether the deadline that the IRS did promulgate is a permissible deadline under the statute. I conclude it is not. Congress created two forms of so-called "traditional relief" and imposed a two-year deadline on both. Sec. 6015(b)(1)(E), (c)(3)(B). Congress next provided for "Equitable Relief"—the whole purpose of which was to grant "relief * * * *not* available * * * under subsection (b) or (c)". Sec. 6015(f)(2) (emphasis added). For this broader equitable relief Congress did not

---

206, sec. 1204(b), 112 Stat. 722 ("fair and equitable treatment of taxpayers").

[5] See, e.g., secs. 4971(g)(5) ("excessive or otherwise inequitable"), 4980F(c)(4) (same), 4980I(e)(2)(C) (same).

impose a two-year deadline—nor any deadline—and it authorized the IRS to establish "procedures". Sec. 6015(f). For the agency then to slap onto the equitable provision the same two-year deadline that Congress had manifestly chosen *not* to impose shows a failure to discern the Congressional purpose in enacting this broader equitable relief. The two-year deadline is not valid.

———————

THORNTON and HOLMES, *JJ.*, dissenting: We continue respectfully to dissent from the majority and to think that the regulation requiring taxpayers to apply for relief under section 6015(f) within 2 years is valid under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). We explained our reasons in our dissent in *Lantz v. Commissioner*, 132 T.C. 131, 152–161 (2009). The Court of Appeals for the Seventh Circuit reversed the majority in that case, 607 F.3d 479 (7th Cir. 2010), and the issue is already pending in at least two other circuits, see *Mannella v. Commissioner*, No. 10–1308 (3d Cir.) (argument set for November 17, 2010), appealing 132 T.C. 196 (2009); *Coulter v. Commissioner*, No. 10–680 (2d Cir.) (briefing completed September 8, 2010), appealing a stipulated decision of this Court.

The majority mostly repeats its original reasons for invalidating the regulation. We write again to respond to its new argument hinted at in its observation that "equity traditionally did not include a strict 'statute of limitations'". Majority op. p. 377. The majority seems to suggest that by using the term "inequitable" in section 6015(f), Congress meant to invoke traditional notions of equity jurisprudence that would preclude the IRS from imposing any fixed deadline, notwithstanding the statute's expansive delegation of discretionary authority for the IRS to provide relief "Under procedures prescribed by the Secretary".

We think this argument reads too much into the word "inequitable" which, to an ordinary speaker of English, usually just means "unfair". See Merriam Webster's Collegiate Dictionary 638 (11th ed. 2008), http://mw1.merriam-webster.com/dictionary/inequitable. And that seems to be the way Congress thought it was using "inequitable". Section

6015(f) provides that the Secretary may provide relief if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency". This language derives from former section 6013(e), which, as enacted in 1971, authorized the Secretary to provide innocent spouse relief if various requirements were met, including that "taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency". Act of Jan. 12, 1971, Pub. L. 91–679, sec. 1, 84 Stat. 2063. The contemporaneous reports of the congressional tax-writing committees indicate identically that the purpose of this legislation was to "correct the *unfairness* in the situations brought to the attention of this committee and to bring government tax collection practices into accord with basic principles of equity and *fairness*." H. Rept. 91–1734, at 2 (1970) (emphasis added); S. Rept. 91–1537, at 2 (1970), 1971–1 C.B. 606, 607 (emphasis added).

Although the words "equity" or "equitable" might trigger echoes of old chancery practice, "inequitable" should not—the opposites of "equity" and "equitable" in the chancery sense are not "inequity" or "inequitable", but "common law" and "legal". We think it exceptionally improbable that the word "inequitable" in section 6015(f) means, as the majority might seem to suggest, "contrary to principles of equity jurisprudence, including its traditional aversion to strict statutes of limitation." A request for relief under section 6015(f) is called a request for "equitable relief" not because it is a request for reformation, rescission, specific performance, or accounting, but because to a reasonable decisionmaker at the IRS it would be unfair to hold one spouse jointly liable with another for a particular tax debt.

The majority believes that a fixed deadline is unfair because in some cases it may result in denial of relief that otherwise would be available. But, as Judge Posner observes, this circumstance "does not bear on the validity of the deadline; *any* statute of limitations will cut off some, and often a great many, meritorious claims." *Lantz v. Commissioner*, 607 F.3d at 481.

Similarly, we respectfully disagree with those concurring who believe that the concept of equitable tolling has any bearing on the validity of the regulation. If, as they suggest, equitable tolling might be available to provide relief from the

regulatory deadline—a theory, incidentally, that neither party has raised or addressed—this circumstance would negate the assumption, central to the majority's reasoning, that the deadline is an absolute temporal bar to relief.

HALPERN, GALE, and MORRISON, *JJ*., agree with this dissent.