Thornton and Holmes, JJ., dissenting: We continue respectfully to dissent from the majority and to think that the regulation requiring taxpayers to apply for relief under section 6015(f) within 2 years is valid under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). We explained our reasons in our dissent in Lantz v. Commissioner, 132 T.C. 131, 152-161 (2009). The Court of Appeals for the Seventh Circuit reversed the majority in that case, 607 F.3d 479 (7th Cir. 2010), and the issue is already pending in at least two other circuits, see Mannella v. Commissioner, No. 10-1308 (3d Cir.) (argument set for November 17, 2010), appealing 132 T.C. 196 (2009); Coulter v. Commissioner, No. 10-680 (2d Cir.) (briefing completed September 8, 2010), appealing a stipulated decision of this Court. The majority mostly repeats its original reasons for invalidating the regulation. We write again to respond to its new argument hinted at in its observation that “equity traditionally did not include a strict ‘statute of limitations’”. Majority op. p. 377. The majority seems to suggest that by using the term “inequitable” in section 6015(f), Congress meant to invoke traditional notions of equity jurisprudence that would preclude the IRS from imposing any fixed deadline, notwithstanding the statute’s expansive delegation of discretionary authority for the IRS to provide relief “Under procedures prescribed by the Secretary”. We think this argument reads too much into the word “inequitable” which, to an ordinary speaker of English, usually just means “unfair”. See Merriam Webster’s Collegiate Dictionary 638 (11th ed. 2008), http://mwl.merriam-web-ster.com/dictionary/inequitable. And that seems to be the way Congress thought it was using “inequitable”. Section 6015(f) provides that the Secretary may provide relief if “taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency”. This language derives from former section 6013(e), which, as enacted in 1971, authorized the Secretary to provide innocent spouse relief if various requirements were met, including that “taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency”. Act of Jan. 12, 1971, Pub. L. 91-679, sec. 1, 84 Stat. 2063. The contemporaneous reports of the congressional tax-writing committees indicate identically that the purpose of this legislation was to “correct the unfairness in the situations brought to the attention of this committee and to bring government tax collection practices into accord with basic principles of equity and fairness.” H. Rept. 91-1734, at 2 (1970) (emphasis added); S. Rept. 91-1537, at 2 (1970), 1971-1 C.B. 606, 607 (emphasis added). Although the words “equity” or “equitable” might trigger echoes of old chancery practice, “inequitable” should not — the opposites of “equity” and “equitable” in the chancery sense are not “inequity” or “inequitable”, but “common law” and “legal”. We think it exceptionally improbable that the word “inequitable” in section 6015(f) means, as the majority might seem to suggest, “contrary to principles of equity jurisprudence, including its traditional aversion to strict statutes of limitation.” A request for relief under section 6015(f) is called a request for “equitable relief” not because it is a request for reformation, rescission, specific performance, or accounting, but because to a reasonable decisionmaker at the IRS it would be unfair to hold one spouse jointly liable with another for a particular tax debt. The majority believes that a fixed deadline is unfair because in some cases it may result in denial of relief that otherwise would be available. But, as Judge Posner observes, this circumstance “does not bear on the validity of the deadline; any statute of limitations will cut off some, and often a great many, meritorious claims.” Lantz v. Commissioner, 607 F.3d at 481. Similarly, we respectfully disagree with those concurring who believe that the concept of equitable tolling has any bearing on the validity of the regulation. If, as they suggest,, equitable tolling might be available to provide relief from the regulatory deadline — a theory, incidentally, that neither party has raised or addressed — this circumstance would negate the assumption, central to the majority’s reasoning, that the deadline is an absolute temporal bar to relief. Halpern, Gale, and Morrison, JJ., agree with this dissent.