T.C. Summary Opinion 2010-153

UNITED STATES TAX COURT

MARVINA DARLENE HARPER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10792-09S.              Filed October 14, 2010.

Marvina Darlene Harper, pro se.

Alicia A. Mazurek, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Pursuant to section 6015, petitioner made an administrative request for relief from joint and several liability for Federal income taxes for 2001, 2002, and 2003. By notice respondent denied petitioner's request for relief. Petitioner timely filed a petition with this Court under section 6015(e) for review of respondent's determination.

The sole issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 2001, 2002, and 2003.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in the State of Michigan when the petition was filed.

Petitioner and Frederick Verdell Harper (Mr. Harper) met while petitioner was a resident at Harper House, a substance abuse treatment facility run by Mr. Harper. Petitioner and Mr. Harper were married in April 1996. During their marriage, petitioner and Mr. Harper assumed traditional roles: Mr. Harper was the sole breadwinner and managed the household finances while petitioner maintained the home; her only source of income was Social Security benefits. Although petitioner would occasionally

help out at Harper House by driving female residents to appointments, she was not involved in the bookkeeping or finances of the business.

All of the couple's assets were owned in Mr. Harper's sole name; petitioner did not have a bank account in her name, nor did she and Mr. Harper have any joint accounts. Although petitioner testified that she and Mr. Harper had what she thought was a good marriage, she did not have any money of her own (other than modest Social Security benefits) and had to ask Mr. Harper for money to make most purchases.

Petitioner and Mr. Harper filed joint Federal income tax returns for 2001, 2002, and 2003. Mr. Harper had each of the returns prepared by a professional tax return preparer and did not need to request documents or records from petitioner to facilitate the completion of the returns. At Mr. Harper's request, petitioner signed each of the tax returns but did not review the returns for accuracy. Because Mr. Harper handled all of the financial matters for the household and business, petitioner did not know that tax debts were accumulating.

Petitioner and Mr. Harper were divorced in May 2006, and Mr. Harper died in May 2008.

On November 25, 2008, the Internal Revenue Service (IRS) received petitioner's Form 8857, Request for Innocent Spouse Relief. Ultimately, the IRS denied petitioner's request for

relief from joint and several liability under section 6015(f) on the basis that petitioner had not shown that she did not know and had no reason to know that the taxes would not be paid.

Petitioner filed the petition in this case on May 6, 2009.

## Discussion

A spouse may be relieved from joint and several tax liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable. The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). The record establishes that petitioner satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297-298.

We consider all relevant facts and circumstances in determining whether the taxpayer is entitled to innocent spouse relief. Porter v. Commissioner, 132 T.C. 203, 210 (2009). We may consider evidence introduced at trial even if it was not included in the administrative record. Porter v. Commissioner, 130 T.C. 115, 117 (2008). In determining whether relief is justified, we give no deference to the IRS' determination that petitioner is not entitled to relief. See Porter v. Commissioner, 132 T.C. at 210.

If a requesting spouse fulfills the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, the Commissioner will

ordinarily grant relief from joint and several liability with respect to underpayments on a joint Federal income tax return, provided all of the following additional requirements are satisfied:  (1) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief.  Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.

Respondent concedes that petitioner was divorced from Mr. Harper on the date she requested relief under section 6015(f). However, respondent contends that petitioner has not established that (1) she had no knowledge or reason to know, on the dates that the 2001, 2002, and 2003 joint Federal income tax returns were signed, that the underpayments reported on those returns would not be paid or (2) she would face economic hardship if her request for relief were denied.  Accordingly, respondent argues that petitioner has not satisfied the requirements of Rev. Proc. 2003-61, sec. 4.02, and is therefore not entitled to equitable relief under section 6015(f).  We disagree.

1. <u>Knowledge or Reason To Know</u>

Respondent contends that because petitioner did not review the returns before signing them and did not know there was a balance due when she signed the returns, she could not have believed that Mr. Harper would pay the balance due.

Even if petitioner had reviewed the returns, she would not have known or had reason to know that the liabilities reported on the returns would not be paid. Mr. Harper handled all of the couple's financial affairs for both the household and his business, and petitioner was responsible for maintaining the home. During the years in issue petitioner did not have a bank account in her own name, nor did she have access to a jointly held bank account; all accounts were in Mr. Harper's sole name. Thus, even if petitioner had reviewed the 2001, 2002, and 2003 joint Federal income tax returns and seen that there were balances due, she would not have known, or had reason to know, that Mr. Harper would not pay the tax liabilities, nor would she have had access to resources to pay the liabilities herself or even to ascertain whether the liabilities had been paid.

2. <u>Economic Hardship</u>

Respondent contends that petitioner would not experience economic hardship if her request for equitable relief were denied.

To ascertain whether a requesting spouse will suffer economic hardship if the Commissioner denies his or her request for section 6015(f) relief, Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs. Those rules provide that an economic hardship exists if an individual is unable to pay reasonable living expenses. In determining a reasonable amount for basic living expenses, the Commissioner shall consider information provided by the taxpayer, including: (1) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else; (2) the amount reasonably necessary for food, clothing, housing, utilities, medical expenses, transportation, child support, and other necessities; (3) the cost of living in the geographical area in which the taxpayer lives; (4) the amount of property available to pay the taxpayer's expenses; (5) any extraordinary circumstances, e.g., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Although we are not required to accept petitioner's testimony uncritically, see Ishizaki v. Commissioner, T.C. Memo. 2001-318, neither are we required to reject petitioner's testimony if we find it credible, see, e.g., Washington v.

<u>Commissioner</u>, 120 T.C. 137, 150 (2003). Indeed, we find petitioner's testimony, as well as that of her witness, to be honest, forthright, and credible.

In addition, the IRS has issued guidelines for allowable expenses. "Necessary expenses are those that meet the necessary expense test; i.e., 'they must provide for a taxpayer's * * * health and welfare and/or the production of income' and they must be reasonable." <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129 n.6 (quoting Internal Revenue Manual pt. 5.15.1.3(2) (Mar. 31, 2000). There are three types of necessary expenses: (1) Those based on national standards, e.g., food, housekeeping supplies, clothing, and personal care products and services; (2) those based on local standards, e.g., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards. <u>Id.</u>

When petitioner and Mr. Harper divorced in 2006, petitioner was left with nothing: Mr. Harper took the car, and there was no joint property to divide between them. Petitioner pulled herself up by her bootstraps, went back to school, and earned a degree, and she now works as a substance abuse counselor. Petitioner is employed part time at a hospital, typically working 20 hours per week and earning $18 an hour. Petitioner's salary is supplemented by the occasional bonuses given by the hospital. Petitioner's testimony regarding her expenses, augmented by the

national standards, indicates that her expenses equal, if they do not exceed, her income.

Thus, we conclude that petitioner would face economic hardship if her request for relief under section 6015(f) were denied.

Accordingly, based on our review of all the facts and circumstances, we hold that petitioner is entitled to relief from joint and several liability under section 6015(f) for the 3 years in issue.

## Conclusion

We have considered all of the substantive arguments made by respondent regarding the issue of petitioner's entitlement to relief from joint and several liability under section 6015(f).[2] To the extent that we have not specifically addressed any of

---

[2] At trial on Mar. 1, 2010, as well as in a posttrial memorandum brief, respondent also invoked sec. 1.6015-5(b)(1), Income Tax Regs., and argued that petitioner had failed to file her claim for relief within the 2-year period specified in the regulation. In Lantz v. Commissioner, 132 T.C. 131 (2009), this Court invalidated sec. 1.6015-5(b)(1), Income Tax Regs.; however, on June 8, 2010, our decision in that case was reversed by the Court of Appeals for the Seventh Circuit. Lantz v. Commissioner, 607 F.3d 479 (7th Cir. 2010). Nevertheless, at this time in circuits other than the Seventh Circuit, Lantz v. Commissioner, 132 T.C. 131 (2009), remains the law of this Court. Hall v. Commissioner, 135 T.C. ___ (Sept. 22, 2010); cf. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971). As petitioner's case would be appealable to the Court of Appeals for the Sixth Circuit were it not a small tax case, see sec. 7463(b), we follow this Court's decisions in Lantz and Hall.

those arguments, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.